ORIGINAL

FILED
DEC 1 4 2007
U.S. COURT OF
FEDERAL CLAIMS

# In The United States Court of Federal Claims

PARADIGM LEARNING, INC.

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 07-873 C

## COMPLAINT

Plaintiff Paradigm Learning, Inc. ("Paradigm") for its complaint against defendant, states as follows:

## PARTIES

1. Paradigm is a corporation organized under the laws of the State of Florida, with its principal place of business at 2701 North Rocky Point Drive, Suite 400, Tampa, Florida 33607.

2. Defendant is the United States of America acting through the United States Department of the Army, Defense Acquisition University ("the DAU" or "United States").

## JURISDICTION

3. This is a civil action brought by Paradigm against the United States pursuant to Section 10 of the Contract Disputes Act of 1978, 41 U.S.C. § 609 and the Tucker Act, 29 U.S.C. § 1491.

4. On January 8, 2003, Paradigm entered into GSA Schedule Contract No. GS-10F-0192N, and the DAU made purchases of Paradigm's products and services through this schedule contract.

5. Every Paradigm product delivered to DAU was subject to (a) the parties' Confidentiality and Non-Disclosure Agreement and (b) proprietary data legends contained on every Paradigm product.

6. On August 11, 2006, Paradigm submitted a claim to the DAU Director of Contracting under the Contract Disputes Act seeking the amount of $336,126 .00 for DAU's breach of (a) the parties' Confidentiality and Non-Disclosure Agreement and (b) the proprietary legends contained on Paradigm's products delivered under the purchase orders. A copy of the Contract Disputes Act claim is attached as Exhibit 1.

7. More than sixty days elapsed after the DAU's receipt of Paradigm's claim, with no response from any representative of the DAU.

8. On December 14, 2006, DAU issued a purported Contracting Officer's Final Decision denying Paradigm's claim. A copy of the purported Contracting Officer's Final Decision is attached as Exhibit 2.

9. In accordance with 41 U.S.C. § 609(a)(1), Paradigm timely appeals from either the failure of the DAU to issue a contracting officer's final decision or otherwise to communicate to Paradigm within the CDA mandated 60 days, or from the December 14, 2006 Contracting Officer's Final Decision, as the case may be.

## **Statement of Facts**

Paradigm's Investment in Developing ZODIAK and Protection of Its Proprietary Data

10. Beginning in August 1993, Paradigm professional personnel began developing a unique learning tool, ZODIAK®, the Game of Business Finance and Strategy ("ZODIAK") for a client, Harris Semiconductors.

11. Paradigm completed its initial version of ZODIAK in June 1994, but has continued to improve and refine it since.

12. ZODIAK is a facilitated simulation that puts learners into the position of buying a business. ZODIAK requires a certified facilitator. Teams of four participants interact with simulation materials that include a game board, investor cards, chance cards, "shipping" containers, and chips. Additionally, each participant is required to use a ZODIAK participant guide.

13. During the course of development, Paradigm invested approximately $500,000 of its own funds.

14. Paradigm undertook intensive pilot testing of the design to finalize both the content and the learning process.

15. Paradigm executed an agreement with Harris Semiconductors reserving all of Paradigm's intellectual property rights for the ZODIAK program.

16. The Government did not participate in the development or funding of ZODIAK.

17. ZODIAK was at its inception and continues to be at the forefront of sophisticated learning tools in business finance and strategy.

18. ZODIAK's functions are complex, intricate, and uniquely designed to achieve specific learning goals.

19. No individual or group starting from scratch could develop a comparable learning tool in less than the time required and cost incurred by Paradigm.

20. Because Paradigm's proprietary property and the products derived from it are the lifeblood of the company, Paradigm has zealously protected its proprietary rights in the information and property it markets.

21. Paradigm conditioned all sales of the ZODIAK product on the execution of a suitable license or confidentiality agreement, and on honoring the proprietary data legends on all ZODIAK products.

22. The license and confidentiality agreements and the proprietary legends explicitly barred any use, copying, or dissemination of ZODIAK other than for the particular client's use in presenting training programs using ZODIAK.

23. Paradigm employees execute confidentiality agreements, as appropriate, and Paradigm controls access to its facility to prevent unauthorized access to confidential data.

<u>The DAU's 2002 Desire to Obtain ZODIAK for its Training Needs</u>

24. In March 2002, DAU representative Debbie Johnson requested that Paradigm perform a demonstration of ZODIAK at Ft. Belvoir, VA so that the DAU could determine whether ZODIAK met the "simulation" requirement within the DAU's five-day Contractor 100 ("CON 100") program.

25. CON 100 is a government-mandated curriculum for Department of Defense acquisition personnel.

26. Paradigm agreed to perform the demonstration.

27. Robb Gomez, Vice President of Sales for Paradigm, and Constance Bentley, now Chief Operating Officer for Paradigm, conducted the March 2002 demonstration.

28. At the conclusion of the demonstration, the DAU requested that Robb Gomez return to Ft. Belvoir and conduct a three-hour ZODIAK demonstration for a group of 16 curriculum managers to confirm that ZODIAK was appropriate for CON 100.

29. In April 2002, Mr. Gomez conducted the three-hour ZODIAK demonstration.

30. In or about April 2002, the DAU decided to use ZODIAK in its training program.

31. DSD Laboratories, Inc. held a suitable GSA Schedule contract and, at the request of the DAU, acted as a conduit for the initial purchase of ZODIAK.

32. On May 1, 2002, Paradigm received an order for ZODIAK materials and facilitator training through DSD Laboratories, Inc. for the DAU.

33. The value of the initial purchase was $85,960.

34. The provision of products through DSD Laboratories, Inc. did not include any conveyance of data rights or intellectual property, and all products delivered bore proprietary legends.

<u>The Confidentiality and Non-Disclosure Agreement With Respect To Paradigm's Proprietary Data Rights in ZODIAK</u>

35. Prior to fulfilling the DAU's May 1, 2002 purchase order, Paradigm requested that the DAU execute a standard license agreement restricting use and dissemination of the materials and the information contained in them.

36. The DAU declined to execute a license agreement, and instead, the DAU and Paradigm agreed to execute an appropriate confidentiality agreement that would provide equivalent protection to Paradigm.

37. On April 5, 2002, Paradigm forwarded a standard "Confidentiality and Non-Disclosure Agreement" to the DAU for review and execution.

38. The DAU executed the agreement the same day.

39. The Confidentiality and Non-Disclosure Agreement acknowledged in paragraph 1 that Paradigm "has designed, developed and utilizes methods and designs which are confidential and in which PARADIGM has a proprietary interest." A copy of the Confidentiality and Non-Disclosure Agreement is attached as Exhibit 3.

40. In the case of learning tools, the methods and designs enumerated in the Confidentiality and Non-Disclosure Agreement included "manuals and game board designs, layout and placement of graphics," and "processes utilized in the preparation of the products." Exhibit 3.

41. The methods and designs of the Confidentiality and Non-Disclosure Agreement were otherwise described as "the design of the total system" and the "integral parts and processes" not designed by third parties. Exhibit 3.

42. The Confidentiality and Non-Disclosure Agreement extended to all items and services to be provided by Paradigm, including "training materials." Exhibit 3, Para.3.

43. The Confidentiality and Non-Disclosure Agreement provided that Paradigm would grant the DAU access to its proprietary data "only as necessary for conducting business with each other," and for no other purpose. Exhibit 3, Para. 2.

44. Under the Confidentiality and Non-Disclosure Agreement, the DAU undertook to maintain confidentiality of all information "which may in any way reveal the total system, or part thereof, or the processes, procedures, design of any equipment . . . or any other confidential information . . . ." Exhibit 3, Para. 2.a.

45. The DAU further promised under the Confidentiality and Non-Disclosure Agreement to "make no copies, distribute, or otherwise disseminate any data or any other confidential information." Exhibit 3, Para. 2.b.

46. The Confidentiality and Non-Disclosure Agreement would cease to apply to proprietary information that "becomes known to the public through no fault of" the DAU or is acquired by the DAU "from a third party having no obligation to the owning party to maintain the information in confidence." Exhibit 3, Para. 8.

47. Aside from this exception, under the Confidentiality and Non-Disclosure Agreement the "covenant of confidentiality and non-disclosure shall be enforceable and binding . . . so long as such confidential information remains confidential . . . ." Exhibit 3, Para. 4.

Paradigm's Provision of ZODIAK Training Materials and Facilitator Training to the DAU, 2002-2005

48. On January 8, 2003, Paradigm entered into GSA Schedule Contract GS-10F-0192N, which covered a variety of products and services, including ZODIAK. A copy of GSA Schedule Contract GS-10F-0192N is attached as Exhibit 4.

49. The contract permitted government agencies to make purchases of ZODIAK products and services from the Schedule at agreed prices.

50. Paradigm's products and services included: game boxes, facilitator kits, learner guides, and facilitator training.

51. The contract did not convey to the Government any proprietary data or data rights, but left all such matters to be "specified or negotiated in the agency's order." Exhibit 4, Mod. FX11, C-FSS-40, page 49.

52. Under the DSD Laboratories, Inc. arrangement, and pursuant to the GSA Schedule Contract, the DAU purchased the following additional ZODIAK materials and services invoiced from Paradigm from May 1, 2002 and June 8, 2005:

6297 Learner Guides;

165 Game Boxes;

86 Units of Facilitator Training; and

24 Facilitator Kits.

53. The DAU ceased placing orders for ZODIAK after June 8, 2005.

Paradigm's Protective Legends

54. Each of the Learner Guides provided by Paradigm to the DAU included the following legend on the inside front cover:

> © 1994, 2001. Paradigm Learning, Inc. Not for Disclosure, reproduction, or use without prior written permission. All rights reserved. Note: This Guide is intended for the use of a single learner **within licensed organizations only**. Any other use prohibited.

(emphasis in original).

55. Each of the Facilitator Guides provided to the DAU included the following on the inside front cover:

> © 1994, 2001 Paradigm Learning, Inc. Not for disclosure, reproduction, or use without prior written permission. All rights reserved. Note: This guide is intended for the use of Paradigm Learning approved facilitators. Any other use prohibited.

56. The materials in each game box included similar proprietary legends. The box itself included the following proprietary legend:

> © 1994 PARADIGM COMMUNICATIONS, ALL RIGHTS RESERVED

The DAU's Appropriation of Paradigm's Proprietary Information to Produce a Clone of ZODIAK

57. Beginning in 2003, DAU developed a clone of ZODIAK.

58. Specifically, a DAU ZODIAK-trained facilitator, Molly Parker, began the design and development of what became known as the KAndy Business Simulation in 2004, the year following the DAU's first direct purchase of Paradigm's products that included protected proprietary information.

59. Molly Parker was qualified as a ZODIAK-trained facilitator on June 6, 2002.

60. On August 27, 2003, Ms. Parker stated in an e-mail to Paradigm's Robb Gomez:

> FYI. I'm the course manager for a course on "business," in particular, the Defense Industrial Base. I'm revising my course & ***would like to revise it using or around Zodiak.*** If my budget doesn't get cut (big "if"), we need to talk some more about having Paradigm help with the revision. If it gets cut "some," I plan on using the current Zodiak as part of the course. ***If it gets cut a lot, I'll have to rethink the revision.***

(emphasis added).

61. The DAU held its first class with the cloned simulation in early 2005. In this year, DAU purchases of ZODIAK Learner Guides declined from several thousand annually to twenty-seven.

62. The KAndy gameboard bears the following legend in the lower left hand corner:

> MDSIGI-V10FRP-DTD-19MAY05
> Created by: Molly Parker, Steve Israel, Gerry Land
> Defense Acquisition University

63. Steve Israel and Gerry Land received ZODIAK-facilitator training on September 2, 2004.

64. But for their exposure to ZODIAK's confidential facilitator training and their access to ZODIAK game boxes and other materials containing Paradigm's proprietary information, Ms. Parker and the others could not have developed the cloned simulation.

65. Before the DAU obtained access to Paradigm's proprietary information (and promised to hold it confidential and not to use or disseminate it), the DAU and Ms. Parker did not possess a simulation learning tool that had any resemblance to ZODIAK.

66. KAndy is a clone of the ZODIAK product.

67. DAU appropriated Paradigm's proprietary data in breach of the proprietary data legends contained on every ZODIAK product and in violation of the parties' Confidentiality and Non-Disclosure Agreement.[1]

The DAU's Concealment of its Improper Cloning of ZODIAK

68. From the outset of its development of the KAndy clone, DAU was aware that its conduct with regard to ZODIAK proprietary data was wrongful, and, on information and belief, sought to conceal it.

69. On June 2, 2005, Robb Gomez of Paradigm sent a message to Debbie Johnson at the DAU asking for an "estimate of what DAU's needs might be for ZODIAK guides."

70. On June 9, 2005, Ms. Johnson replied, "I am working this issue now and I anticipate the quantity to be roughly in the same ballpark." Upon information and belief, Ms. Johnson was aware of the cloning of ZODIAK at the time she made this statement.

---

[1] On January 18, 2007, Paradigm filed a complaint in the United States District Court for the Eastern District of Virginia (Case No. 01:07cv56 (LMB/LOG), captioned Paradigm Learning, Inc. v. Kenneth J. Krieg, Under Secretary of Defense for Acquisition, Technology & Logistics), pursuant to 18 U.S.C. § 1905 and 5 U.S.C. §§ 701-06, seeking a preliminary injunction and a permanent injunction prohibiting the defendant and the Defense Acquisition University from disclosing Paradigm's trade secrets to other defense contractors.

71. On September 15, 2005, Mr. Gomez sent another e-mail to Ms. Johnson referring to possible facilitator training needs for ZODIAK and requesting the status of "the order for your '06 ZODIAK material needs."

72. On October 3, 2005, Ms. Johnson stated for the first time that the DAU "will no longer be using the ZODIAK game in CON 100," but offered no explanation.

73. On information and belief, Ms. Johnson was aware at the time she made this statement that the DAU had already cloned ZODIAK.

74. The same day, October 3, 2005, Mr. Gomez responded asking Ms. Johnson to "shed some light on this," questioning whether the DAU curriculum changed.

75. Later that same day, October 3, 2005, Ms. Johnson responded again, avoiding any mention of the functional cloning, and merely stating, "[d]ue to budgetary constraints a recent decision was made to reduce CON 100 in length to save in travel dollars," and that "the decision was also made to eliminate the ZODIAK Game."

76. Upon information and belief, Ms. Johnson was fully aware at the time of the cloning of ZODIAK that Con 100 had in fact not been reduced in length but merely adapted for the use of the clone.

77. The next day, October 4, 2005, Mr. Gomez contacted Ms. Johnson again, and Ms. Johnson referred him to John Krieger, the DAU Director for Contracting.

78. On October 12, 2005, Mr. Gomez stated in an e-mail to Mr. Krieger that "this recent news was a fairly large surprise for us and [we] want to be able to estimate its total impact."

79. On October 19, 2005, John Krieger sent an e-mail to Mr. Gomez explaining the possible use of ZODIAK by other certified providers, and referenced for the first time the "Kandy simulation."

80. On November 16, 2005, Mr. Gomez asked Mr. Krieger by email: "Where could I get information about the Kandy simulation. Who developed it."

81. On November 18, 2005, Mr. Krieger responded by email that the KAndy simulation "was developed by the Defense Acquisition University," and identified Ms. Molly Parker as an individual "who would be able to provide you the most information."

82. On January 27, 2006, Mr. Gomez stated in an email to both Mr. Krieger and Ms. Parker:

> I never did receive information on the Kandy (sic) Electronics simulation other than another DAU associate [Rex Bragaw, Program Director, Center for Contracting, October, 2005] sharing with me that it is a classroom based board game simulation. I would like to receive more detailed information or if you can direct me to where I might get it that would be great as well.

83. On February 8, 2006, Molly Parker responded with a lengthy e-mail to Mr. Gomez, with copies to Mr. Krieger and a William Erie, stating that the KAndy simulation had its origins in a DAU course taught in the 1980s; that the DAU had made the decision to prepare its own simulation "about six years ago"; that "we spent more than a couple of years doing research on business simulations"; that the KAndy simulation "is a Monopoly-like engine with a touch of Candyland thrown in"; that the DAU simulation "does not use . . . the 'face card' idea from Clue as ZODIAK does"; and that the simulation is still under test and development before being released on line.

84. On March 21, 2006, Paradigm proposed a visit to Ft. Belvoir for a demonstration of the KAndy simulation, so that company personnel could understand better the extent to which it was similar to or different from ZODIAK.

85. On April 17, 2006, the meeting took place, and Paradigm was able to confirm that KAndy was essentially a clone of ZODIAK, with a few cosmetic changes to disguise that fact.

**Count I: Breach of Contract**

**(Confidentiality Agreement)**

86. Paradigm incorporates by reference paragraphs 1-84 of this Complaint as though set forth in full.

87. Paradigm and the DAU entered into a Confidentiality and Non-Disclosure Agreement on April 5, 2002 based on the DAU's expressed interest in ZODIAK and Paradigm's refusal to provide ZODIAK without the appropriate protection.

88. Through the Confidentiality and Non-Disclosure Agreement, the DAU agreed to protect "the confidentiality of Paradigm's proprietary systems, processes and procedures applied to and utilized in the business of Paradigm Learning."

89. The DAU breached its obligation to protect Paradigm's proprietary information by creating KAndy, a clone of ZODIAK, with Paradigm's proprietary data. But for its exposure to ZODIAK confidential facilitator training and their access to ZODIAK game boxes and other materials containing Paradigm's proprietary information, the DAU could not have developed the cloned simulation.

90. As a direct result of the DAU's wrongful breach of its obligation to safeguard the confidentiality of Paradigm's proprietary data, Paradigm suffered damages in the form of lost profits and lost revenue. Specifically, the DAU has deprived Paradigm of sales and other business opportunities it would otherwise have realized by appropriating Paradigm's protected property to create KAndy.

91. Paradigm has suffered damages in the amount of $336,126.00, plus interest, as a direct result of the DAU's breach of contract.

**Count II: Breach of Implied-in-Fact Contract**

**(Restricted Rights Legends)**

92. Paradigm incorporates by reference paragraphs 1-90 of this Complaint as though set forth in full.

93. Every product supported by Paradigm included proprietary rights restrictions.

94. By accepting delivery of products including those legends, the DAU acceded to an implied-in-fact contract to protect Paradigm's proprietary data.

95. In carrying out its cloning of ZODIAK, the DAU violated its obligation to protect Paradigm's proprietary data.

96. But for its exposure to ZODIAK's confidential facilitator training and its access to ZODIAK game boxes and other materials containing Paradigm's proprietary information, DAU could not have developed the cloned simulation.

97. As a direct result of the DAU's wrongful breach of its obligation to safeguard the confidentiality of Paradigm's proprietary data, Paradigm suffered damages in the form of lost profits and lost revenue. Specifically, the DAU has deprived Paradigm of sales and other business opportunities it would otherwise have realized by appropriating Paradigm's protected property to create KAndy.

98. Paradigm has suffered damages in the amount of $336,126.00, plus interest, as a direct result of DAU's breach of contract.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Award Plaintiff money damages in the amount of $336,126.00 for the DAU's material breach of its obligation to safeguard Paradigm's proprietary information;

b. Award Plaintiff costs and attorneys' fees; and

c. Grant such other and further relief as the Court may deem just and equitable in the circumstances.

Respectfully submitted,

Date: December 14, 2007

By: ______________________
Richard C. Johnson, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for Paradigm Learning, Inc.*

*Of Counsel*:
John S. Pachter
SMITH PACHTER MCWHORTER PLC