# ATTACHMENT 1

PARADIGM LEARNING

THE POWER OF DISCOVERY

August 11, 2006

Mr. John Krieger
Director of Contracting
Defense Acquisition University
9820 Belvoir Road
Fort Belvoir, VA 22060

Re: GS-10F-0192N and DAU Purchase Orders; CDA Claim, Claim Certification, and Request for Final CO Decision.

Dear Mr. Krieger:

This is a claim under the Contract Disputes Act, 41 U.S.C. §§ 601-613, FAR Subpart 33.2, and FAR 52.233-1 for breach of contract in the amount of $376,370.46, as of this date.[1] The underlying dispute pertains to performance under Paradigm's schedule contract.[2] See FAR 8.406-6. Pursuant to FAR 52.233-1 and FAR 8.406-6. Id.[3]

Paradigm requests that the Government issue a contracting officer's final decision with respect to the claim within 60 days of the date of receipt of this letter. Paradigm is willing to meet with the Government at a convenient time to explain its position in further detail or answer any questions.

---

[1] This amount is subject to change based on any continued government use of improperly appropriated proprietary data.

[2] The Defense Acquisition University ("DAU") made purchases not covered by Paradigm's GSA Schedule contract. Those purchases are incorporated in this CDA claim. A list of all of the included DAU purchases, both GSA and otherwise, are included in Attachment 1 to this letter. Paradigm reserves the right to modify this list.

[3] FAR 8.406-6 provides, in pertinent part: (1) Disputes pertaining to the performance of orders under a schedule contract. (1) Under the Disputes clause of the schedule contract, the ordering activity contracting officer may—(i) issue a final decision on disputes arising from performance of the order (but see paragraph (b)

• 2201 North Rocky Point Drive • Suite 900 • Tampa, Florida 33607

Paradigm alleges that the DAU breached the above-referenced Purchase Orders, by (1) violating the proprietary legends contained on the products delivered under the Purchase Orders, and (2) violating the April 5, 2002 Confidentiality and Non-Disclosure Agreement that was an integral component of the Purchase Orders, without which no purchase orders would have been accepted and no products would have been provided.

The details of Paradigm's CDA claims are set forth on pages 2-21 of the attached letter dated June 27, 2006 from the law firm of Smith Pachter McWhorter to Alan P. Klein, Esq., Intellectual Property Counsel of the Army. Attachment 2. As a result of the DAU's breaches, Paradigm is entitled to $376,370.46, plus CDA interest to the date of payment.

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Because of the possibility of formal proceedings on the matter discussed herein, we request that the DAU take steps to retain all documents, including notes, drafts and e mails, which may be relevant to the issues raised, including in particular and without limitation, all documents related to the creation, distribution and use of the KAndy simulation. Under the applicable rule, "the duty to preserve evidence arises not only during litigation but also extends to the period before the litigation when a party reasonably should know that the

---

of this section; or (ii) Refer the dispute to the schedule contracting officer. (2) The ordering activity contracting officer shall notify the schedule contracting officer promptly of any final decision...

evidence may be relevant to anticipated litigation." Rambus, Inc. v. Infineon Technologies AG, 220 F.R.D. 264 (E.D. Va. 2004); see also Fed. R. Civ. Proc. 37.

Sincerely,

Raymond D. Green
Chief Executive Officer

cc: Geri Smith
Contracting Officer
GSA Management Services Center
400 15th St. SW
Room 2757
Auburn, WA 98001-6599

Paradigm Learning, Inc.
DAU Purchases 2002 - 2005

| Invoice # | Invoice Date | moun | Description | Total $'s | Order # | PO # | Delivery Order # | Requisition Purchase Req. # | Credit Card # | Name on Card |
|---|---|---|---|---|---|---|---|---|---|---|
| 9507821 | 5/31/2002 | 19 | Zodiak Learners Guides | 1,349.00 | 1003519 | | | | 4716-3000-0353-6746 | Cheryl Clark |
| 9508094 | 7/30/2002 | 4 | Zodiak Game Boxes | 1,200.00 | 1003668 | | | | 4716-3000-0272-6447 | Kenneth King |
| 9508255 | 8/30/2002 | 34 | Zodiak Game Boxes | 2,414.00 | 1003776 | | | | 4716-3000-0353-2653 | |
| 9508398 | 9/30/2002 | 93 | Zodiak Learners Guides | 5,766.00 | 1003833 | | | | 4716-3010-0011-4503 | Angel Quick |
| 9508402 | 9/30/2002 | 48 | Zodiak Learners Guides | 2,976.00 | 1003830 | | | | 4716-3010-0011-4503 | Angel Quick |
| 9508403 | 9/30/2002 | 72 | Zodiak Learners Guides | 4,464.00 | 1003831 | | | | 4716-3010-0011-4503 | |
| 9508404 | 9/30/2002 | 24 | Zodiak Learners Guides | 1,488.00 | 1003832 | | | | 4716-3010-0011-4503 | Angel Quick |
| 9508405 | 9/30/2002 | 72 | Zodiak Learners Guides | 4,464.00 | 1003834 | | | | 4716-3010-0011-4503 | Angel Quick |
| 9508406 | 9/30/2002 | 72 | Zodiak Learners Guides | 4,464.00 | 1003835 | | | | 4716-3010-0011-4503 | Angel Quick |
| 9508446 | 10/10/2002 | 6 | Zodiak Game Boxes | 1,050.00 | 1003885 | S3-10-C01 | | | 4716-3000-0431-xxxx | Cheryl Clark |
| 9508448 | 10/10/2002 | 6 | Zodiak Learners Guides | 1,050.00 | 1003886 | S3-10-C01 | | | 4716-3000-0431-xxxx | Cheryl Clark |
| 9509011 | 02/26/03 | 42 | Zodiak Game Boxes | 7,282.38 | 1004133 | GS-10F-0192N | | | | |
| 9509011 | 02/26/03 | 1325 | Zodiak Learners Guides | 74,995.00 | 1004133 | GS-10F-0192N | | | | |
| 9509562 | 07/07/03 | 70 | Zodiak Learners Guides | 4,970.00 | 1004501 | | | | | |
| 9509639 | 7/28/2003 | 24 | Facilitator Training | 15,820.08 | 1004304 | | | | | |
| 9509639 | 7/28/2003 | 24 | Zodiak Facilitator Kit | 9,240.00 | 1004304 | | | | | |
| 9509639 | 7/28/2003 | 12 | Zodiak Game Boxes | 2,100.00 | 1004304 | | | | | |
| 9509821 | 9/5/2003 | 50 | Zodiak Learners Guides | 3,550.00 | 1004623 | | | | | |
| 9509822 | 9/5/2003 | 50 | Zodiak Learners Guides | 3,550.00 | 1004624 | | | | | |
| 9510159 | 12/8/2003 | 12 | Zodiak Game Boxes | 2,100.00 | 1004861 | | N65538-03-F-0145 | N6553803PRT0098 | | |
| 9510159 | 12/8/2003 | 1453 | Zodiak Learners Guides | 82,821.00 | 1004861 | | N65538-03-F-0145 | N6553803PRT0098 | | |
| 9510178 | 12/4/2003 | 7 | Zodiak Game Boxes | 1,225.00 | 1004854 | | | | 4716-3000-0432-xxxx | Annetta McAllister |
| 9510705 | 4/5/2004 | 427 | Zodiak Learners Guides | 23,912.00 | 1005206 | | | | | |
| 9511268 | 8/10/2004 | 15 | Facilitator Training | 15,000.00 | 1005611 | | | | | |
| 9511268 | 8/10/2004 | 15 | Zodiak Learners Guides | 840.00 | 1005611 | | | | | |
| 9511552 | 9/27/2004 | 1708 | Zodiak Learners Guides | 95,648.00 | 1005549 | | | | | |
| 9511786 | 11/5/2004 | 18 | Zodiak Learners Guides | 1,008.00 | 1005908 | GS-10F-0192N | | | | |
| 9511918 | 12/10/2004 | 2 | Zodiak Learners Guides | 112.00 | 1005993 | | | | | |
| 9512770 | 6/8/2005 | 27 | Zodiak Learners Guides | 1,512.00 | | | | | | |
| | | | Total | 376,370.46 | | | | | | |

smith•pachter•mcwhorter PLC
attorneys at law • 703-847-6300 • Fax 703-847-6312 • www.smithpachter.com

8000 TOWERS
CRESCENT DRIVE
SUITE 900
VIENNA, VA 22182

June 27, 2006

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Alan P. Klein, Esq.
Intellectual Property
Counsel of the Army
Army Legal Services Agency
901 N. Stuart St.
Arlington, Virginia 22203-1837

Re: Paradigm Learning; Copyright Infringement and Wrongful Appropriation of Proprietary Information by the Defense Acquisition University

Dear Mr. Klein:

The purpose of this letter is to place the Army on notice of the Defense Acquisition University's (DAU) infringement of copyright and parallel wrongful appropriation of proprietary information by its act of creating a learning tool known as KAndy from material provided by Paradigm Learning ("Paradigm") in the form of Zodiak®, the Game of Business Finance and Strategy ("ZODIAK"). The facts and governing legal authorities are set forth below. Attached as Enclosure 1 is the information required by regulation pertaining to the copyright violation.

It is Paradigm's firm intention to enforce its legal rights and seek appropriate redress to the fullest permissible extent, if it is forced to do so. Paradigm believes, however, that a preferable result would be a negotiated resolution that affords protection



Attachment 2

to Paradigm's proprietary information and copyrighted material, and provides appropriate recognition of the impact of past violations, while concurrently responding to the essential needs of the DAU now and in the future.

## Summary

In 1993-1994 Paradigm created the proprietary ZODIAK learning program at a cost of approximately $500,000. Beginning in 2002, the DAU began to purchase ZODIAK training materials from Paradigm, subject to a non-disclosure agreement, proprietary legends on the products involved, and copyright protection. In approximately 2003, the DAU began to create what amounts to a clone of the ZODIAK training materials, which the DAU initiated into use in early 2005, simultaneous with the cessation of purchases of ZODIAK from Paradigm. The DAU could not have created the ZODIAK clone without access to and use of Paradigm's proprietary materials.

The DAU's actions constitute breach of contract, violation of proprietary legends, copyright infringement, and Fifth Amendment takings. Each of these violations is actionable in an appropriate forum.

## Statement of Facts

I. Paradigm's Heavy Investment in Developing ZODIAK

Beginning in August, 1993, Paradigm professional personnel began developing ZODIAK as a unique learning tool for business finance and strategy. At that time nothing comparable existed. Paradigm completed its initial version of ZODIAK in June, 1994.

but has continued to improve and refine it since. During the course of development, Paradigm invested approximately $500,000 of its own funds. In an intensive effort over approximately nine months, the principals of Paradigm Learning, Catherine Rezak, Raymond Green, and John Holmes designed the ZODIAK program for its client, Harris Semiconductor, in Melbourne, Florida. They worked closely with Harris' VP of Organizational Development, his staff members, and members of the finance organization of Harris and the entire senior management team including the President, John Garrett. Paradigm undertook intensive pilot testing of the design during this time in order to finalize both the content and the learning process. An agreement with Harris Semiconductor reserved to Paradigm Learning all copyrights, trademarks and other intellectual property rights for the ZODIAK program. The Government did not participate in any way in the development or funding of ZODIAK. ZODIAK was at its inception and continues to be at the forefront of sophisticated learning tools in the area of business finance and strategy. Its functions are complex, intricate, and uniquely designed to achieve specific learning goals. No individual or group starting from scratch, even one as qualified as the Paradigm group, could develop a comparable learning tool in less than the time required and cost incurred by Paradigm.

2. <u>Paradigm's Copyright and Trade Secret Protection of ZODIAK</u>

Because Paradigm's intellectual property and the products derived from it are the lifeblood of the company, Paradigm has zealously protected its proprietary rights in the

information and property it markets. In the case of ZODIAK, Paradigm sought and obtained copyright protection between 1995 and 2003: On June 5, 1995, March 16, 1996 and February 14, 2003 for the Learners Guide; on June 5, 1995 and March 16, 1996 for the Game Box design; on March 16, 1996, April 23 and September 16, 1998, and April 2, 2003, for the ZODIAK Game of Business Finance and Strategy; and on November 15, 2002 for the Facilitator Guide.

In addition, Paradigm scrupulously maintained Uniform Trade Secrets Act ("UTSA") trade secret protection of ZODIAK by conditioning all sales of the product on the execution of a suitable license or confidentiality agreement, and by including proprietary data legends on all of its ZODIAK products. These license and confidentiality agreements explicitly barred any use, copying or dissemination of ZODIAK other than for the particular client's use in presenting training programs using ZODIAK. Paradigm employees execute confidentiality agreements, as appropriate, and Paradigm controls access to its facility to prevent unauthorized access to confidential data. Individuals undergoing facilitator training by Paradigm instructors are routinely cautioned regarding the proprietary nature of the materials they are provided.

3. <u>The DAU's 2002 Desire to Obtain ZODIAK for its Training Needs</u>

In March 2002, having learned of Zodiak from another company, DAU representative Debbie Johnson requested a demonstration of ZODIAK at Ft. Belvoir, VA. This demonstration was conducted by Robb Gomez, VP of Sales for Paradigm and

Constance Bentley, now COO for Paradigm. In attendance from the DAU were three curriculum managers, including Ms. Johnson. The purpose of the demonstration was to evaluate whether ZODIAK met the "simulation" requirement of the five day CON 100 program. Linda Neilson was the decision maker for the DAU and attended part of the two hour meeting. At the conclusion of the demonstration, the DAU perceived real value to including ZODIAK in the CON 100 program and the DAU later agreed that Robb Gomez would return to Ft. Belvoir and conduct three hours of ZODIAK for a group of 16 curriculum managers to confirm that ZODIAK was the right fit for CON 100. That program (conducted in April 2002) met with great success and the DAU made the decision to use ZODIAK in CON 100. On May 1, 2002, Paradigm received an order for ZODIAK materials and facilitator training through DSD Laboratories, Inc. for the DAU. DSD held a suitable GSA Schedule contract and, at the request of the DAU, acted as a conduit for the initial purchase of ZODIAK. The value of the initial purchase was $85,960. The provision of products through DSD did not include any conveyance of data rights or intellectual property, and all products delivered bore suitable proprietary legends.

4. The DAU's Agreement to Respect Paradigm's Intellectual Property Rights in ZODIAK

When DAU expressed interest in ZODIAK, Paradigm representative Judi Kratz explained to Debbie Johnson that ZODIAK was proprietary to the company and that Paradigm asked all customers to execute an appropriate license agreement restricting use

and dissemination of the materials and the information contained in them. Ms. Johnson responded that the DAU would have problems executing a license agreement, as it was apparently unfamiliar with that approach to protection of intellectual property.[1] However, the DAU would agree to execute an appropriate confidentiality agreement, which would provide equivalent protection to Paradigm. Trusting in the *bona fides* of DAU, Paradigm agreed, and on April 5, 2002, forwarded a standard "Confidentiality and Non-Disclosure Agreement" for review and execution. Ms. Johnson executed the agreement the same day. There can be no question but that Ms. Johnson consulted with her superiors before signing the agreement.

The Confidentiality and Non-Disclosure Agreement ("the Agreement") acknowledged that Paradigm "has designed, developed and utilizes methods and designs which are confidential and in which PARADIGM has a proprietary interest." (Para. 1). In the case of learning tools, the methods and designs included "manuals and game board designs, layout and placement of graphics," and "processes utilized in the preparation of the products." Id. They were otherwise described as "the design of the total system" and the "integral parts and processes" not designed by third parties. Id. The Agreement extended to all items and services to be provided by Paradigm, including "training materials." Para.3.

[1] The Government routinely executes license agreements, most commonly in the purchase of computer software. DAU personnel apparently were unaware of this practice.

The Agreement provided that Paradigm would grant the DAU access to its proprietary data "only as necessary for conducting business with each other," and for no other purpose. Para. 2. In return, the DAU undertook to maintain confidentiality of all information "which may in any way reveal the total system, or part thereof, or the processes, procedures, design of any equipment . . . or any other confidential information . . . ." Para. 2.a. The DAU further promised to "make no copies, distribute, or otherwise disseminate any data or any other confidential information." Para. 2.b.

The Agreement would cease to apply to proprietary information that "becomes known to the public through no fault of" the DAU or is acquired by the DAU "from a third party having no obligation to the owning party to maintain the information in confidence." Para. 8. Aside from this one exception, however, the "covenant of confidentiality and non-disclosure shall be enforceable and binding . . . so long as such confidential information remains confidential . . . ." Para. 4.

5. <u>Paradigm's Provision of ZODIAK Training Materials and Facilitator Training to the DAU, 2002-2005</u>

As noted above, the DAU first began to purchase ZODIAK materials in May, 2002 through DSD Laboratories. Then, on January 8, 2003, Paradigm entered into GSA Schedule Contract GS-10F-0192N, which covered a variety of products and services, including ZODIAK. The contract permitted government agencies to make purchases of ZODIAK products and services from the Schedule at agreed prices. These included: game boxes, facilitator kits, learner guides, and facilitator training. The contract did not

convey to the Government any proprietary data or data rights, but left all such matters to be "specified or negotiated in the agency's order." Mod. FX11, C-FSS-40, page 49. As noted above, the DAU and Paradigm had already resolved that issue in the April 2002 Confidentiality and Non-Disclosure Agreement, prior to Paradigm furnishing any ZODIAK materials to the DAU.

Under the DSD arrangement, and pursuant to the GSA Schedule Contract, the DAU purchased the following ZODIAK materials and services invoiced from Paradigm between April 30, 2002 and June 8, 2005, after which all purchases by the DAU ceased:

6297 Learner Guides

165 Game Boxes

86 Units of Facilitator Training

24 Facilitator Kits

The details of these purchases are set forth in Attachment 3.

Each of the Learner Guides provided by Paradigm to DAU included the following legend on the inside front cover:

> © 1994, 2001. Paradigm Learning, Inc. Not for Disclosure, reproduction, or use without prior written permission. All rights reserved. Note: This Guide is intended for the use of a single learner **within licensed organizations only**. Any other use prohibited.

(emphasis in original).

Each of the Facilitator Guides provided to DAU included the following on the inside front cover:

> © 1994, 2001 Paradigm Learning, Inc. Not for disclosure, reproduction, or use without prior written permission. All rights reserved. Note: This guide is intended for the use of Paradigm Learning approved facilitators. Any other use prohibited.

The materials in each game box included similar proprietary legends. The box itself included the following proprietary legend:

> © 1994 PARADIGM COMMUNICATIONS, ALL RIGHTS RESERVED

Moreover, facilitators trained by Paradigm were routinely warned of the proprietary nature of the materials they were provided.

6. <u>The DAU's Clandestine Appropriation of Paradigm's Proprietary Information to Produce a Clone of ZODIAK</u>

Paradigm has only recently become aware that the DAU, almost simultaneously with its direct purchases of ZODIAK products and services from Paradigm beginning in 2003, undertook to devise what amounts to a clone of ZODIAK. Specifically, a DAU ZODIAK-trained facilitator, Molly Parker,[2] began the design and development of what became known as the KAndy Business Simulation in 2004, the year following the DAU's first direct purchase of Paradigm's products that included protected proprietary

[2] Ms. Parker was qualified as a facilitator on June 6, 2002.

information. In retrospect, perhaps Paradigm should have raised a red flag based on an e mail statement of August 27, 2003 that Ms. Parker made to Robb Gomez:

> FYI. I'm the course manager for a course on "business," in particular, the Defense Industrial Base. I'm revising my course & ***would like to revise it using or around Zodiak***. If my budget doesn't get cut (big "if"), we need to talk some more about having Paradigm help with the revision. If it gets cut "some," I plan on using the current Zodiak as part of the course. ***If it gets cut a lot, I'll have to rethink the revision***. (emphasis added)

Whatever happened to Ms. Parker's budget, the cloning of ZODIAK took place over the next year. The DAU reportedly held its first class with the cloned simulation in January-February 2005, the same year that the DAU purchases of ZODIAK Learner Guides declined from several thousand annually to 27. The KAndy gameboard bears the following legend in the lower left hand corner:

> MDSIGI-V10FRP-DTD-19MAY05
> Created by: Molly Parker, Steve Israel, Gerry Land
> Defense Acuisition University

In addition to Ms. Parker, both Steve Israel and Gerry Land received ZODIAK facilitator training on September 2, 2004. Their training may well have been deliberately timed to allow them to assist with KAndy, since by that time, it was well known at the DAU that Ms. Parker was undertaking the cloning effort and that there would be no future need for DAU employees to be trained in ZODIAK.

But for their exposure to ZODIAK confidential facilitator training and their access to ZODIAK game boxes and other materials containing Paradigm's proprietary

information, Ms. Parker and the others could not have developed the cloned simulation. ZODIAK's development required close to a year and the efforts of many highly skilled professionals as explained earlier. It strains credulity to assert that three Government individuals without comparable specialized training and who had to be trained by Paradigm in the basic operation of ZODIAK could duplicate these efforts in the space of one year or less. Moreover, the coincidences are too many and too close to permit any such explanation. Before the DAU obtained access to Paradigm's proprietary information (and promised to hold it confidential and not to use or disseminate it), the DAU and Ms. Parker did not possess a simulation learning tool that had any resemblance to ZODIAK. Simultaneous with its acquisition of Paradigm's proprietary material, the thought apparently occurred to the DAU to develop a course of its own, perhaps only if its budget got "cut a lot." When we compare the content of the two simulations (Enclosure 2), the similarities are simply too strong to be put down to chance. In short, the evidence is overwhelming that the DAU appropriated Paradigm's proprietary data with no thought as to the promises it had made not to do so, and in defiance of the proprietary data legends contained on every single ZODIAK document Paradigm ever provided.

7. The DAU's Concealment of its Improper Cloning of ZODIAK

The fact the DAU was aware that its conduct with regard to ZODIAK proprietary data was wrongful seems well borne out by the e mail exchanges between the DAU and Paradigm beginning in June 2005. This was already several months after the DAU had

initiated training using the cloned simulation, with no notice to Paradigm. On June 2, 2005, Robb Gomez of Paradigm sent a message to Debbie Johnson at the DAU asking for an "estimate of what DAU's needs might be for ZODIAK guides." A week later on June 9, Ms. Johnson replied that "I am working this issue now and I anticipate the quantity to be roughly in the same ballpark." At this very time, however, the DAU had already initiated use of its cloned simulation, which had been completed and issued the month previously, and it is beyond any doubt that Ms. Johnson was aware of that.

Next, on September 15, 2005, Mr. Gomez sent another e-mail to Ms. Johnson referring to possible facilitator training needs for ZODIAK and requesting the status of "the order for your '06 ZODIAK material needs." This time, two weeks passed without a response. Then, on October 3, Ms. Johnson responded with half the truth. She explained that the DAU "will no longer be using the ZODIAK game in CON 100." What she omitted was any admission that the DAU had essentially cloned ZODIAK in violation of its agreement not to do so and in defiance of the proprietary rights legend on every Paradigm document ever provided. The same day, Mr. Gomez responded asking Ms. Johnson to "shed some light on this," questioning whether the DAU curriculum changed. Later that day, Ms. Johnson responded again, avoiding any mention of the functional cloning, and merely stating that "[d]ue to budgetary constraints a recent decision was made to reduce CON 100 in length to save in travel dollars," and that "the decision was

also made to eliminate the ZODIAK Game." Ms. Johnson did not explain what was being substituted.

The next day, Mr. Gomez contacted Ms. Johnson again, referring to another possible fallout of the DAU cancellation, and this time Ms. Johnson simply opted out of the dialogue by passing responsibility to John Krieger, the DAU Director for Contracting. Undaunted, Mr. Gomez wrote again on October 12, pointing out that "this recent news was a fairly large surprise for us and [we] want to be able to estimate its total impact." Then, on October 19, John Krieger sent an e mail to Mr. Gomez explaining the possible use of ZODIAK by other certified providers. Mr. Krieger did not explain, any more than Ms. Johnson had, what the DAU had been up to behind Paradigm's back, but let slip an unexplained reference to "the KAndy simulation." Mr. Gomez replied on November 16 in complete ignorance of what Mr. Krieger meant by this reference. He asked: "Where could I get information about the Kandy simulation. Who developed it."

Two days later on November 18, for the first time since this exchange of emails began six months earlier, Mr. Krieger responded admitting that the KAndy simulation "was developed by the Defense Acquisition University." Mr. Krieger also identified Ms. Molly Parker for the first time as an individual "who would be able to provide you the most information." He did not explain that Ms. Parker was the alleged "creator" of KAndy.

No further enlightenment came from the DAU, and on January 27, 2006, Mr. Gomez complained to both Mr. Krieger and Ms. Parker that:

> I never did receive information on the Kandy (sic) Electronics simulation other than another DAU associate [Rex Bragaw, Program Director, Center for Contracting, October, 2005] sharing with me that it is a classroom based board game simulation. I would like to receive more detailed information or if you can direct me to where I might get it that would be great as well.

On February 8 Molly Parker responded with a lengthy e mail to Mr. Gomez, with copies to Mr. Krieger and a William Erie. Ms. Parker took on the guise of someone who is absent-minded and disorganized, hardly the characteristics of a simulation genius who came up with the KAndy simulation out of the blue and in virtually no time -- "I'm notorious for skimming emails & missing things." Ms. Parker then launched into an attempt to lure Paradigm off the track of the ZODIAK cloning by claiming that the KAndy simulation had its origins in a DAU course taught in the 1980s; that the DAU had made the decision to prepare its own simulation "about six years ago"; that "we spent more than a couple of years doing research on business simulations"; that the KAndy simulation "is a Monopoly-like engine with a touch of Candyland thrown in"; that the DAU simulation "does not use . . . the 'face card' idea from Clue as ZODIAK does"; and that the simulation is still under test and development before being released on line.

On February 17, 2006, counsel for Paradigm sent a letter to the President of the DAU asserting the DAU's infringement of Paradigm's copyrights on ZODIAK. The

Army's Intellectual Property Counsel responded on February 28 and both counsel spoke by telephone on March10, the day after Army counsel forwarded guidelines for the filing of administrative claims for copyright infringement. Paradigm on March 21 proposed a visit to Ft. Belvoir for a demonstration of the KAndy simulation, so that company personnel could understand better the extent to which it was similar to or different from ZODIAK. The meeting took place on April 17, during which Paradigm was able to confirm that KAndy was essentially a clone of ZODIAK, with a few cosmetic changes to disguise that fact.

## Discussion

### I. Summary

The DAU wrongfully appropriated Paradigm's proprietary ZODIAK data in defiance of the proprietary data legends contained on all ZODIAK documents, in contravention of the confidentiality agreement, and in disregard of intellectual property laws. The DAU's unlawful actions give rise to three distinct causes of action, namely: (1) breach of the confidentiality/non-disclosure agreement and Paradigm's protective legends; (2) copyright infringement; and (3) Fifth Amendment takings. Paradigm may seek redress in the Court of Federal Claims for all of its claims, and may elect to bring suit in either the Court or the Armed Services Board of Contract Appeals ("ASBCA") for its breach of contract claim. The DAU is answerable in monetary damages for each claim, as mandated by case law, statute, and the Constitution.

2. The DAU's Actions Violate the Confidentiality Agreement with Paradigm and the Restricted Rights Legends on the ZODIAK Materials Provided, Giving Rise to a Claim Under the Tucker Act or the Contract Disputes Act

As discussed earlier, Paradigm and the DAU entered into a Confidentiality and Non-Disclosure Agreement on April 2, 2002 based on the DAU's expressed interest in ZODIAK and Paradigm's refusal to provide ZODIAK without the appropriate protection. The agreement protected "the confidentiality of Paradigm's proprietary systems, processes and procedures applied to and utilized in the business of Paradigm Learning." Given the DAU's clear breach of the Agreement by its functional cloning of ZODIAK, Paradigm may seek redress either in the Court of Federal Claims or the ASBCA.

The Court of Federal Claims has jurisdiction under the Tucker Act to hear Paradigm's breach of confidentiality claim against the DAU. The Tucker Act provides that:

> ***The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded*** either upon the Constitution, or any Act of Congress or any regulation of an executive department, or ***upon any express or implied contract with the United States***, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

28 USCS § 1491(a)(1) (emphasis added). The Tucker Act is a purely jurisdictional statute and does not create a substantive right against the United States. See Griswold v. United States, 61 Fed. Cl. 458, 462 (Fed. Cl. 2004) (citations omitted).

In Dunaway v. United States, 18 Cl. Ct. 492, 495 (Ct. Cl. 1989) (emphasis added), the Court provided three criteria that must be met for the Court of Federal Claims to exercise jurisdiction over a matter under the Tucker Act:

1) the claim must be against the United States;

2) the claim must be founded upon the Constitution, an act of Congress, an executive departmental regulation, ***an express or implied contract*** with the United States, or for liquidated or unliquidated damages;

3) the claim must not sound in tort.

The Court also noted: "The Claims Court has exclusive jurisdiction over all contract claims against the United States where the claim is in excess of $10,000." Id.

Paradigm's breach claim is against the DAU – a governmental entity. The Confidentiality and Non-Disclosure Agreement entered into by the parties is an express contract. Paradigm's claim against the DAU does not sound in tort and Paradigm's monetary damages are well in excess of $10,000.

As noted in Trauma Service Group v. United States, 104 F.3d 1321, 1326 (Fed Cir. 1997), " ... any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." As noted above, the parties entered into negotiations for the purchase by the DAU of Paradigm's ZODIAK. Paradigm, in an effort to protect its proprietary data, asked the DAU to enter

into a licensing agreement. In response the DAU asserted it would enter instead into a confidentiality agreement with Paradigm. The purpose of that agreement was to protect ZODIAK, as a pre-condition to providing the DAU with access to ZODIAK so that the parties could "conduct business with each other".

Further, the Government's representative, Debbie L. Johnson clearly had authority to bind the Government. The DAU put Ms. Johnson forward as its representative to negotiate for, and obtain, ZODIAK. In order to fulfill that function, she had to address the issue of confidentiality, and she did so. Moreover, the record will unquestionably show that she consulted others at the DAU regarding her refusal to execute a license agreement and her willingness to enter into the Confidentiality Agreement as a substitute. Ms. Johnson clearly had delegated authority to do what she did. See Telenor Satellite Services, Inc. v. United States, No. 05-528C, *2006 U.S. Claims LEXLX 13*, June 2, 2006, at 6-7.[3]

As noted by the Court in Flexfab, L.L.C. v. United States, 62 Fed. Cl. 139, 148 (Fed. Cl. 2004):

> It is beyond dispute that parties seeking to enforce contracts against the United States - as opposed to individuals - face an additional requirement: they have the added burden of establishing that the government representative whose conduct they relied upon had the actual authority to bind the government. City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990). Actual authority may be express or implied. H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989). A

[3] Ms. Johnson could not have carried out her duties to obtain suitable training aids absent such authority, as Paradigm would not have furnished ZODIAK materials to the DAU without the agreement.

> government employee possesses express authority to bind the government when the Constitution, a statute, or a regulation unambiguously grants him such authority. Starflight Boats v. United States, 48 Fed. Cl. 592, 598 (2001). A government employee possesses implied authority to bind the government when such authority is an integral part of the duties assigned to him. Roy v. United States, 38 Fed. Cl. 184, 189 (1997). Contracting authority is integral to a government employee's duties when the government employee could not perform his or her assigned tasks without such authority and the relevant agency regulation does not grant such authority to other agency employees. Id. at 189-90.

Paradigm may also elect to file a breach of contract claim under the Contract Disputes Act ("CDA"). The Contract Disputes Act applies to the following contracts:

> (a) Executive agency contracts. Unless otherwise specifically provided herein, this Act applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of title 28, United States Code) entered into by an executive agency for—
>
> (1) the procurement of property, other than real property in being;
> (2) the procurement of services;
> (3) the procurement of construction, alteration, repair or maintenance of real property; or,
> (4) the disposal of personal property.

41 USCS § 602.

The DAU purchased ZODIAK materials and services by purchase orders to Paradigm under the terms of GSA Schedule Contract GS-10F-0192N. The DAU purchased those items subject to the parties' Confidentiality Agreement, as well as subject to the proprietary information legends on the products. These facts meet the jurisdictional requirements of the CDA for a procurement contract. See Wesleyan

smith·pachter·mcwhorter PLC



Company, Inc., ASBCA No. 53896, 2005-1 B.C.A. ¶32,950 (2005); General Connectors Corp., ASBCA No. 32298, 87-2 B.C.A ¶19,751 (1987).

In Paradigm's case, the procurement contract left open to the parties to protect proprietary data by leaving such matters "*to be specified or negotiated in the agency's order*" (emphasis added). Paradigm and the DAU did just that in the parties' Confidentiality Agreement. Since the procurement of goods and services was inextricably bound to the terms of the Confidentiality Agreement, the jurisdictional requirement of the CDA is clearly met.

Under the CDA, Paradigm may elect to file its claim with the ASBCA. See Rex Systems, Inc., ASBCA No. 54436, 2005-2 BCA ¶ 33,028, at 163,695. In Rex Systems, Rex alleged breach of the restricted use provisions of three implied-in-fact agreements. The Government argued that the Board did not have subject matter jurisdiction. The Board held that two of the implied-in-fact contracts -- for the procurement of drawings with restricted use provisions – met the CDA jurisdictional requirement, and accepted jurisdiction.

The same result would obtain even in the absence of the Confidentiality Agreement. Every product supported by Paradigm included proprietary rights restrictions. Simply by accepting delivery of products including those legends, the DAU acceded to an implied-in-fact contract to protect Paradigm's proprietary data. See Rex

Systems, 05-2 BCA, supra, at 163,695. In carrying out a cloning of ZODIAK, the DAU violated that agreement.

3. The DAU's "KAndy Simulation" Infringes On Paradigm's Registered Copyrights in its ZODIAK Learning Tool

The DAU's wrongful acts also constitute copyright infringement. By statute, Paradigm may bring a suit for monetary damages against the DAU for copyright infringement in the Court of Federal Claims. 28 U.S.C. § 1498(b); Leonardo v. United States, 55 Fed. Cl. 344, 348 (2003); see also Wechsberg v. United States, 54 Fed. Cl. 158, 160 (2002) (claim for copyright infringement against the United States, or a contractor acting with the Government's authorization, must be brought in the Court of Federal Claims).

To establish copyright infringement, Paradigm need show only that it is the owner of valid copyrights in its unique ZODIAK learning tool for business finance and strategy, and that such rights have been copied by the DAU. See Trek Leasing, Inc. v. United States, 66 Fed. Cl. 8, 11 (Fed. Cl. 2005) (case of copyright infringement is established by proof of ownership of valid copyright and copying by defendant); 17 U.S.C. 410(c) (2006) (providing that copyright registration is *prima facie* evidence of the validity of a copyright). Among Paradigm's rights are Copyright Registration Nos. TX 4-068-755, TX-4-721-854, TX-5-635-651, TX-5-982-496, TX-4-259-023, and TX-5-665-776. As discussed below, these copyrighted items have been openly copied by the DAU. Therefore, Paradigm's rights have been infringed.

Illegal copying by the DAU is evidenced by DAU's access to the copyrighted ZODIAK materials and the substantial similarity between the ZODIAK and KAndy simulation learning tools. See Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 532 (5th Cir. 1994) (stating that evidence of copying may be proven indirectly by showing defendants had access to copyrighted works and substantial similarity exists between infringed and infringing works). It is undeniable that the DAU had access to the ZODIAK materials. Paradigm provided ZODIAK training materials and facilitator training to all three DAU individuals prior to their creation of the KAndy simulation. See id. at 533 (affirming lower court's finding of access to infringed works because defendant who developed infringing work also authored infringed work); cf. Kepner-Tregoe, Inc. v. Carabio, 203 U.S.P.Q. (BNA) 124, 1979 U.S. Dist. LEXIS 12910, *31 (E.D. Mich. 1979) (stating that juxtaposition of phrases in infringing work "presents too great a similarity, especially considering the relationship of the parties").

The law recognizes works designed for teaching as being within the general class of "literary works," in which the scope of copyright protection is broad. In regard to teaching materials, the law recognizes that both literal and non-literal elements of copyrightable works may be protected, including specific words, phrases, and sentences selected to convey ideas, as well as the structure, sequence, and organization of the copyrighted works. Kepner-Tregoe, Inc., 12 F.3d at 534-36.

The KAndy training simulation incorporates the same steps as employed in the ZODIAK program, and these steps are expressed in substantially similar language as presented in the ZODIAK materials. See id. Among other things, the language of the steps corresponding to invoicing, purchasing raw materials, accounts receivable, paying, selling, general and administrative (SG&A) costs, and completing manufacturing are so similar between the ZODIAK and KAndy materials "as to lead to no other conclusion than that they were copied." Educational Testing Services v. Katzman, 793 F.2d 533, 541 (3rd Cir. 1986)(finding language of defendant's standardized test questions were not exact duplicates but were "strikingly similar" to plaintiff's questions). Many steps of the KAndy simulation, like those of the ZODIAK program, are expressed with imperative sentences starting with the words "purchase," "move," invoice," "pay," and "place," and even where an imperative sentence of the ZODIAK program is replaced with a declaratory sentence in KAndy, both sentences use the same verb. KAndy may provide two sentences for an idea presented in one sentence in the ZODIAK program, or vice versa; however, "such modifications do not completely dispel the similarity of expression," and the KAndy steps "are but a transparent, syntactic rearrangement of portions of [the copyrighted materials]". Kepner-Tregoe, Inc. 12 F.3d at 535-36 (stating as example that substantial similarity existed between expressions "you consult one-to-one with those that report to you" and "you share the problem with relevant subordinates").

For example, in a completion-of-production step in the first "year", the ZODIAK program provides, "*Complete* the manufacturing of a *batch of products*. *Move one stack ($4 million) from* Manufacturing & Assembly *to* Finished Goods. *Place* in a container to get ready for shipment," and KAndy similarly provides, "You just *completed* production of 1 "*lot*" *of* your *product*. *Move 1 stack ($5M) from* Work-In-Progress (WIP) Inventory *to* Finished Goods Inventory. *Place* a green shipping cap on top of the stack" (emphasis added).

Other steps of KAndy likewise track the sentence structure and language of the ZODIAK program. For example, in an invoicing step in the first "year", the ZODIAK program provides, "Invoice your customers. Move one stack ($8 million) from Customer Orders to Accounts Receivable," and KAndy similarly provides, "Invoice the customer for the sale you just made. Move 1 stack ($10M) from Customer Orders to Accounts Receivable." For a purchasing-of-raw-materials step in the second "year", the ZODIAK program provides "Purchase $2 million in raw materials from Suppliers. Move Cash out and Raw Materials in," and KAndy similarly provides, "Purchase raw materials from your suppliers. Move $2M from Cash to Raw Materials Inventory." For an accounts receivable step in the first "year", the ZODIAK program provides, "Collect prior receivables by moving the previous stack in Accounts Receivable ($8 million) to Cash," and KAndy similarly provides, "Collect the prior quarter's accounts receivable by moving 1 stack ($10M) from Accounts Receivable to Cash." See Kepner-Tregoe, Inc., 12 F.3d at

536 ("While no longer identical to [plaintiff's] materials, the modified [defendant] program still bears many telltale signs of its origins. It is still a copy--still a child of infringement.").

Further, both KAndy and the ZODIAK program employ double-sided coins worth one million dollars each, and include exercises in each quarter denoted by the word "Action" (i.e., ZODIAK chance cards and KAndy "Life" or "Activity" events) which is preceded by a preamble and followed by an instruction. Such instruction in KAndy may include the expression "take 2 minutes in your team and brainstorm actions," which is manifestly similar in expression as the ZODIAK program's instruction "Brainstorming Time! Take two minutes to . . . ." Moreover, each step in both KAndy and the ZODIAK program is prefaced by a square-shadowed bullet. In "year" 3 materials, both the ZODIAK program and KAndy include "if you" statements separated from each other by the word "OR" that is centered between the statements on the page. See Carabio, 1979 U.S. Dist. LEXIS 12910 at *31 (indicating that "the unique and idiosyncratic juxtaposition" "of is-is not" expression with vertical "what-where-when-extent/magnitude" expression was protectable though the individual modes of expression themselves were not protectable).

Moreover, the overall structure and organization of the KAndy simulation resembles that of the ZODIAK program. See Kepner-Tregoe, Inc., 12 F.3d at 534-36 (stating that structure, sequence, and organization of copyrighted works may be protected

and finding infringement where defendant's copied the five processes and eight questions used in plaintiff's training model for management decision-making). Both KAndy and the ZODIAK program employ a similar teaching approach of running a manufacturing company for three "years", using one million dollar coins, a "game" board, and an instruction guide detailing steps to be performed over the years, "with the same skills being taught with the same approach in each system and in approximately the same sequence." Grolier, Inc. v. Educational Reading Aids Corp., 417 F. Supp. 665, 667 (S.D.N.Y. 1976) (finding a *prima facie* case of copyright infringement where defendants' pre-reading program incorporated a similar teaching approach including workbook exercises that alternated with a self-checking "Magic Book" and that adopted the content, format, sequence, and presentation of the various skills of the plaintiff's program).

The KAndy simulation has "telltale signs" that it originated from the copyrighted ZODIAK materials and is therefore an infringing copy.

4. The DAU's Appropriation of Paradigm's Proprietary Data Constitutes a Fifth Amendment Taking

The DAU's appropriation of Paradigm's trade secrets to create the learning tool KAndy constitutes a taking under the Fifth Amendment of the U.S. Constitution, for which jurisdiction lies in the Court of Federal Claims.[4] The takings clause of the Fifth

---

[4] 28 USC § 1491(a)(1) states, in pertinent part:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either *upon the Constitution*, or any Act of Congress or any regulation of

Amendment prevents "private property [to] be taken for public use without just compensation." See Medina Construction, Ltd. v. United States, 43 Fed. Cl. 537, 559 (Fed. Cl. 1999). Given that the takings clause is money-mandating, the Court of Federal Claims has jurisdiction to hear claims brought under it. Id.

Paradigm is not barred from bringing a takings claim against the DAU because it also alleges a breach of contract against the DAU. See id. (Medina asserted both a breach of contract claim and takings claim against the Government).[5]

In response to Medina's taking claim against the government, the Court stated:

> Claims for interference with contractual rights generally give rise to a breach of contract claim and not a taking claim. Sunrise Village Mobile Home Park v. United States, 42 Fed. Cl. 392, 404 (1998); Sun Oil Co. v. United States, 215 Ct. Cl. 716, 768-770, 572 F.2d 786 (1978). However, under certain circumstances the involvement of an express contract is not necessarily fatal to a taking claim. Integrated Logistics Support Sys. Int'l. Inc. v. United States, 42 Fed. Cl. 30, 34 (1998) ("taking claims are not presumed to be foreclosed by claims for breach of express contract merely because the claims share the same factual background").

Id. at 559. Further, in PI Electronics Corp. v. United States, 55 Fed. Cl. 279 (Fed. Cl. 2003) (citations omitted), the Court noted that it had "recognized that the vindication of

---

an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

(emphasis added).

[5] Medina Construction, Inc., a Canadian corporation, contracted with the U.S. government to repair a hangar located at Lajes Field, on the island of Terceira in the Azores Islands off the coast of Portugal. The government decided to terminate the contract for convenience. Medina submitted a termination settlement proposal pursuant to the parties' contract and the CDA. The government contracting officer determined that a CDA claim had arisen and issued a final decision denying Medina's claims for costs. Medina filed a

rights existing independently of the contract at issue cannot be restricted to contractual remedies."

The DAU has no rights whatsoever in Paradigm's proprietary material. Cf. Buse Timber & Sales, Inc. v. United States, 45 Fed. Cl. 258, 263 (1999) (citations omitted) (the Court noted that "where the government is asserting an interest in property it rightfully possesses pursuant to a contract, plaintiff is deprived of nothing and there is not a taking."[6]) The only items the DAU rightfully possesses are the materials and services it purchased under the procurement contract, ***subject to*** both the confidentiality agreement and the proprietary notices on each item. The DAU, acting in a sovereign capacity to acquire Paradigm's property, has taken that proprietary property – trade secrets that Paradigm has assiduously protected and kept from third parties. See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001-1002 (1981). Moreover, it is clear by the creation of the KAndy learning tool by employees of the DAU that those employees participated in an authorized taking. See PI Electronics Corp. at 286.

The U.S. Supreme Court recognizes "Trade Secrets" as property that can be "taken" pursuant to the Fifth Amendment Takings clause so long as the property meets the definition of a trade secret – pursuant to state or federal legislation. See Ruckelshaus

---

complaint in the Court of Federal Claims. Medina asserted several claims against the Government, including breach of contract and a taking under the Fifth Amendment.

[6] The Plaintiff in Buse Timber alleged a taking by the Government of Plaintiff's right to performance under the parties' contract. The Court determined that the contract provided the Government the right to end the contract and that the indefinite suspension of the contract, depriving the Plaintiff of its property right of performance, was a question of contract law. Id. at 263.

v. Monsanto Co., 467 U.S. 986, 1001-1002 (1981). Paradigm's proprietary materials meet the Florida Uniform Trade Secret Act definition of "Trade Secret," the state law applicable to Paradigm's place of business:

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002.

Paradigm has an economic interest in its data and attempts to keep its information protected to retain that interest. See Fla. Stat. § 688.002(4)(a). In support of protecting that information, Paradigm clearly labeled all its data proprietary. See Fla. Stat. § 688.002(4)(b) and Sections 2 and 5, discussed above. Paradigm also controls both its employees and its physical premises to maintain its trade secret protection.

Paradigm has likewise established both its standing to assert a claim as well as the DAU's interference with its property. See Medina at 559. As discussed above, Paradigm labeled its information as proprietary. Further, the KAndy learning tool is essentially a clone of Paradigm's ZODIAK. Without information appropriated from ZODIAK, it would have been impossible for the DAU to have engineered KAndy in such a short period of time.

The DAU has thus appropriated Paradigm's property and has interfered with Paradigm's use of its property. By appropriating Paradigm's protected property to create its KAndy learning tool, the DAU has deprived Paradigm of sales it would otherwise have realized. Potentially even more devastating to Paradigm is what the DAU might choose to do with KAndy going forward. If the DAU elects to sell or distribute its wrongfully created learning simulation to third parties, it would interfere with Paradigm's business even further and could cost the company a substantial portion of its livelihood.

5. <u>The DAU is Answerable in Damages for its Various Violations and Expropriations of Paradigm's Proprietary Data and Copyrights</u>

As discussed above, the DAU is liable for its infringement of Paradigm's copyrights and wrongful appropriation of Paradigm's proprietary information. As a direct result of the DAU's unlawful actions, Paradigm suffered damages in the form of lost profits and lost revenue. Specifically, the DAU has deprived Paradigm of sales it would otherwise have realized by appropriating Paradigm's protected property to create KAndy. Further, if the DAU sells or distributes KAndy to third parties, Paradigm's business would suffer losses and would cost the company a substantial portion of its revenue. Paradigm is entitled to damages under all three of its claims.

First, the DAU is answerable in damages for breaching the confidentiality and non-disclosure agreement with Paradigm and for violating the protective legends

contained on each page of ZODIAK related material.[7] The DAU's wrongful breach of contract deprived Paradigm of sales and other business opportunities. The DAU would be liable for these monetary damages for its wrongful breach of its obligation to safeguard the confidentiality of Paradigm's proprietary data. See, e.g., Airborne Data Inc. v. United States, 1982 U.S. Cl. Ct. LEXIS 2381, at * 27, aff'd, 702 F.2d 1350 (Fed. Cir. 1983) ("Defendant failed to live up to its obligation [to safeguard plaintiff's technology], and is accordingly liable to plaintiff for damages resulting from the defendant's disclosure and use.")

Second, recovery for copyright infringement is governed by 28 U.S.C. § 1498(b). That section provides that the Government is liable for reasonable compensation when it infringes a copyright. 28 U.S.C. § 1498(b); Altman v. United States, 18 Cl. Ct. 267, 282 (1989) (awarding plaintiff monetary damages for Government's copyright infringement). The Government cannot hide behind the shield of sovereign immunity when it infringes a contractor's copyrights. Id.

Finally, the DAU's appropriation of Paradigm's trade secrets to create KAndy constitutes a taking under the Fifth Amendment of the U.S. Constitution. The takings clause of the Fifth Amendment prevents "private property [to] be taken for public use without just compensation." See Medina, supra, 43 Fed. Cl. at 559. There is no question

---

[7] The Supreme Court has consistently held that the "United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and

that the takings clause is, by its nature, money-mandating. U.S. Const., Amend. 5 ("just compensation"); e.g., Ruckelshaus v. Monsanto Co., 467 U.S. 986 (1984) (same). Thus, the DAU would be liable in the form of monetary compensation to Paradigm for taking Paradigm's trade secrets without just compensation.

Accordingly, as mandated by case law, federal statute and the Constitution, Paradigm is entitled to monetary damages for the DAU's expropriations of Paradigm's proprietary information and copyrights.

6. Paradigm Favors an Amicable Settlement of the Issues that will Recognize the Valid Interests of Both Parties

In the event this matter were to proceed into a formal proceeding, Paradigm would seek damages of at least the following:

- The revenue less costs Paradigm has lost in sales of ZODIAK materials to the DAU since the DAU initiated use of the cloned training program.
- Any profit the DAU has made by selling federal agencies training based on use of the KAndy cloned simulation.[8]

Paradigm has not attempted to calculate the full value of these damages, but anticipates that they would exceed $300,000. In the context of a settlement Paradigm would be flexible as to the amount of recovery and the method by which such recovery would be effected.

---

reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen." Lynch v. United States, 292 U.S. 571, 580 (1933).

[8] Paradigm has no knowledge at this point whether the DAU receives "reimbursement" from other agencies for its KAndy training sessions.

In addition, the accumulation of damages would continue indefinitely unless the DAU terminates the use of the KAndy simulation, and Paradigm would thus be required to bring a succession of claims against the DAU. Paradigm would thus request in a settlement that KAndy be deleted from the DAU's catalogue of offerings and that all of the physical items making up the simulation be accounted for and destroyed.

An amicable resolution of the matter would likewise include appropriate assurance from the DAU that it would henceforward conform to its contractual obligations and the copyright laws with respect to ZODIAK.

Lastly, as part of a settlement Paradigm would consider undertaking special modification of its ZODIAK learning tool to accommodate the DAU's special needs or interests, at no cost to the DAU.

## Conclusion

Paradigm requests that you carefully review the foregoing and its attachments, and provide Paradigm an early indication whether the DAU intends to cease its copyright infringements and other violations, and is otherwise willing to enter into discussions to resolve this matter in a way that is satisfactory to both parties.

Lastly, because of the possibility of formal proceedings involving the issues discussed in this letter, it is necessary to request that the Army take steps to retain all documents, including e mails, which may be relevant to the matters discussed herein. Under the applicable rule, "the duty to preserve evidence arises not only during litigation

but also extends to the period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Rambus, Inc. v. Infineon Technologies AG, 220 F.R.D. 264 (E.D. Va. 2004). See also, *Rule 37 of the Federal Rules of Civil Procedure.*

Sincerely,

SMITH PACHTER McWHORTER PLC

Richard C. Johnson

Attachments

cc: Mr. Ray Green – Paradigm
Ms. Tracy Durkin