# In the United States Court of Federal Claims

No. 07-873 C
(Filed: June 14, 2010)

**************************************

| | | |
|---|---|---|
| PARADIGM LEARNING, INC., | * | RCFC 12(b)(1); Jurisdiction; 28 U.S.C. |
| | * | § 1491(a)(2); Contract Disputes Act of |
| Plaintiff, | * | 1978, 41 U.S.C. §§ 601-613; GSA Schedule |
| | * | Contract; Confidentiality and Non- |
| v. | * | Disclosure Agreement; Restrictive Legends; |
| | * | Requirements of a Claim, a Contracting |
| THE UNITED STATES, | * | Officer Decision or Deemed Denial, and a |
| | * | Proper Appeal; Incorporation by Reference; |
| Defendant. | * | Misappropriation of Trade Secrets |

**************************************

Jonathan D. Shaffer, Vienna, VA, for plaintiff.

Joseph A. Pixley, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

**SWEENEY**, Judge

Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the court denies defendant's motion.

## I. BACKGROUND[1]

### A. ZODIAK, the Game of Business Finance and Strategy

At the center of this case is a learning tool developed by plaintiff Paradigm Learning, Inc. titled "ZODIAK, the Game of Business Finance and Strategy" ("ZODIAK"). Compl. ¶ 10. ZODIAK participants, in a facilitated environment, simulate buying a business. Id. ¶ 12. "Teams of four participants interact with simulation materials that include a game board, investor cards, chance cards, 'shipping' containers, and chips." Id. Each participant is required to use a ZODIAK learner guide. Id.

---

[1] The court derives the pertinent facts from plaintiff's complaint ("Compl.") and the exhibits attached thereto ("Compl. Ex.").

Plaintiff began to develop ZODIAK in August 1993 for a client, Harris Semiconductors. Id. ¶ 10.  It worked closely with Harris Semiconductors and conducted intensive pilot testing "to finalize both the content and the learning process." Id. ¶ 14; Compl. Ex. 1 at 23.  During ZODIAK's development, plaintiff "invested approximately $500,000 of its own funds," Compl. ¶ 13; it did not use any government funding or resources, id. ¶ 16.  Plaintiff completed the initial version of ZODIAK in June 1994, but has since continued to improve and refine the product.  Id. ¶ 11.

At some point during its development of ZODIAK, plaintiff executed an agreement with Harris Semiconductors to reserve all of its copyright, trademark, and other intellectual property rights in the product.  Id. ¶ 15; Compl. Ex. 1 at 23.  Plaintiff has "zealously protected its proprietary rights" in ZODIAK.  Compl. ¶ 20.  For example, it has "conditioned all sales of the ZODIAK product on the execution of a suitable license or confidentiality agreement," id. ¶ 21, "explicitly barr[ing] any use, copying, or dissemination of ZODIAK other than for the particular client's use in presenting training programs using ZODIAK," id. ¶ 22.  It also requires its employees to "execute confidentiality agreements, as appropriate," and "controls access to its facility to prevent unauthorized access to confidential data."  Id. ¶ 23.  Finally, it places "proprietary data legends on all ZODIAK products."  Id. ¶¶ 21, 54-56.  For example, each learner guide bears the following legend: "© 1994, 2001.  Paradigm Learning, Inc.  Not for Disclosure, reproduction, or use without prior written permission.  All rights reserved.  Note: This Guide is intended for use of a single learner within licensed organization only.  Any other use prohibited." Id. ¶ 54.  Each facilitator guide bears a similar legend: "© 1994, 2001  Paradigm Learning, Inc. Not for disclosure, reproduction, or use without prior written permission.  All rights reserved. Note: This guide is intended for use of Paradigm Learning approved facilitators.  Any other use prohibited."  Id. ¶ 55.  And, each game box bears the following legend: "© 1994 PARADIGM COMMUNICATIONS, ALL RIGHTS RESERVED."  Id. ¶ 56.

In March 2002, plaintiff performed a demonstration of ZODIAK for the Defense Acquisition University at Fort Belvoir, Virginia.  Id. ¶¶ 24, 27.  The Defense Acquisition University had requested the demonstration to determine whether ZODIAK could be used in "Contractor 100," a five-day, government-mandated course for United States Department of Defense acquisition personnel.  Id. ¶¶ 24-25.  Plaintiff performed a second demonstration for sixteen curriculum managers at the Defense Acquisition University in April 2002.  After this second demonstration, the Defense Acquisition University determined that it wanted to use ZODIAK as one of its training tools.  Id. ¶ 30.

Upon learning of the Defense Acquisition University's interest in purchasing ZODIAK, plaintiff requested that the Defense Acquisition University "execute a standard license agreement restricting use and dissemination" of ZODIAK products.  Id. ¶ 35.  The Defense Acquisition University declined to execute a licensing agreement, but consented to the execution of a confidentiality agreement to provide plaintiff with "equivalent protection" for its seminars, training services, and training materials.  Id. ¶ 36; Compl. Ex. 3 at 57.  The parties executed a Confidentiality and Non-Disclosure Agreement on April 5, 2002.  Compl. ¶¶ 37-38, 42; Compl.

Ex. 3. Debbie L. Johnson, the lead project manager for the Contractor 100 course, signed the agreement on behalf of the Defense Acquisition University and James M. McFarlin, plaintiff's chief financial officer, signed the agreement on plaintiff's behalf. Compl. Ex. 3 at 58. The agreement protected plaintiff's "methods and designs," including "manuals and game board designs, layout and placement of graphics," "processes utilized in the preparation of the products," "the design of the total system," and the "integral parts and processes" designed by plaintiff. Id. at 56; accord Compl. ¶¶ 39-41. The Defense Acquisition University was authorized to use plaintiff's proprietary information "only as necessary for conducting business with" plaintiff and was prohibited from copying, distributing, or disseminating "any data or any other confidential information." Compl. Ex. 3 at 56; accord Compl. ¶¶ 43, 45. The parties also agreed that they were not transferring any patents, copyrights, or trademarks to each other or to or from a third party. Compl. Ex. 3 at 57.

The Defense Acquisition University proceeded to identify an appropriate contracting vehicle for its initial order of ZODIAK: a General Services Administration ("GSA") Schedule contract with DSD Laboratories, Inc. Compl. ¶ 31. It placed its initial order on May 1, 2002. Id. ¶ 32. Plaintiff asserts that its fulfillment of the order through the contract with DSD Laboratories, Inc. "did not include any conveyance of data rights or intellectual property . . . ." Id. ¶ 34.

Plaintiff ultimately entered into its own GSA Schedule contract on January 8, 2003, "which covered a variety of products and services, including ZODIAK." Id. ¶ 48; see also Compl. Ex. 4 (containing a copy of GSA Schedule contract GS-10F-0192N). The Defense Acquisition University placed its last order for ZODIAK on June 8, 2005. Compl. ¶ 53. In total, the Defense Acquisition University purchased the following ZODIAK products and services between May 1, 2002, and June 8, 2005: 6,297 learner guides, 165 game boxes, 86 units of facilitator training, and 24 facilitator kits. Id. ¶ 52. But see Compl. Ex. 1 at 20 (indicating that the Defense Acquisition University purchased 5,551 learner guides, 117 game boxes, 39 units of facilitator training, and 24 facilitator kits). All of the ZODIAK products that plaintiff delivered to the Defense Acquisition University bore the restrictive legends described above. Compl. ¶¶ 34, 54-56.

## B. The KAndy Business Simulation

In 2003, the Defense Acquisition University began to develop a purported clone of ZODIAK, which later became known as the "KAndy Business Simulation" ("KAndy"). Id. ¶¶ 57-58, 66, 84-85. But see id. ¶ 83 (describing the Defense Acquisition University's differentiation of ZODIAK and KAndy). Molly Parker, a Defense Acquisition University employee who became a ZODIAK-trained facilitator on June 6, 2002, initiated the development of KAndy. Id. ¶¶ 58-59. A legend on the KAndy game board indicates that two other Defense Acquisition University employees, Steve Israel and Gerry Land, both of whom were trained as ZODIAK facilitators on September 2, 2004, were involved in KAndy's development. Id. ¶¶ 62-63. Plaintiff alleges that prior to its exposure to ZODIAK, the Defense Acquisition University

did not have a similar business simulation learning tool, that the Defense Acquisition University could not have developed such a tool without its exposure to ZODIAK, and that the Defense Acquisition University appropriated its proprietary data in breach of the restrictive "legends contained on every ZODIAK product and in violation of the parties' Confidentiality and Non-Disclosure Agreement." Id. ¶¶ 64-65.  Plaintiff further alleges that the Defense Acquisition University "was aware that its conduct with regard to ZODIAK proprietary data was wrongful, and . . . sought to conceal it." Id. ¶ 68.

## C. Procedural History

On August 11, 2006, plaintiff filed a certified claim for breach of contract with John Krieger, the Director of Contracting for the Defense Acquisition University.[2]  Compl. Ex. 1. Plaintiff asserted its breach of contract claims under both the GSA Schedule contract with DSD Laboratories, Inc. and its own GSA Schedule contract.  Id. at 17 & n.2.  Specifically, it alleged that the Defense Acquisition University breached the purchase orders issued under the two GSA Schedule contracts by:

> (1) violating the proprietary legends contained on the products delivered under the Purchase Orders, and (2) violating the April 5, 2002 Confidentiality and Non-Disclosure Agreement that was an integral part of the Purchase Orders, without which no purchase orders would have been accepted and no products would have been provided.

Id. at 18.  In a December 14, 2006 letter signed by Thomas J. Hagyard, a contracting officer for the Army Contracting Agency, the Defense Acquisition University denied plaintiff's certified claim.  Compl. Ex. 2.  Plaintiff thereafter filed the instant complaint on December 14, 2007, asserting two claims for relief related to the Defense Acquisition University's development of KAndy: breach of the Confidentiality and Non-Disclosure Agreement and breach of the contracts purportedly implied-in-fact from the restrictive legends displayed on all of the ZODIAK products.  Compl. ¶¶ 86-98.  Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction.  The court deems oral argument unnecessary.

## II. DISCUSSION

### A. RCFC 12(b)(1) Motion to Dismiss

Defendant moves to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1).  In ruling on a motion to dismiss, the court generally assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor.  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).  However, if a defendant challenges the factual basis of the court's jurisdiction,

---

[2]  Plaintiff forwarded a courtesy copy of its claim to Geri Smith, the GSA contracting officer.  Compl. Ex. 1 at 19.

contested allegations in the complaint are not controlling.  Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  Rather, the plaintiff must come forward with a preponderance of evidence in support of its jurisdictional allegations.  McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936).  The court may therefore look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction.  Land v. Dollar, 330 U.S. 731, 735 & n.4 (1974).  If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### B.  Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).  The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time.  Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued."  United States v. Sherwood, 312 U.S. 584, 586 (1941).  The waiver of immunity "cannot be implied but must be unequivocally expressed."  United States v. King, 395 U.S. 1, 4 (1969).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1) (2006).  It also waives sovereign immunity for "any claim by or against, or dispute with, a contractor arising under" the Contract Disputes Act of 1978, ("CDA"), Pub. L. No. 95-563, 92 Stat. 2383 (codified as amended at 41 U.S.C. §§ 601-613 (2006)).  28 U.S.C. § 1491(a)(2).  Here, plaintiff asserts jurisdiction pursuant to 28 U.S.C. § 1491(a)(2) and the CDA, arguing that the Defense Acquisition University has breached both the Confidentiality and Non-Disclosure Agreement and the restrictive legends placed on the ZODIAK products.[3]

---

[3]  In its motion to dismiss, defendant treats plaintiff's complaint as if plaintiff also asserts jurisdiction under 28 U.S.C. § 1491(a)(1) for breach of an express contract with the United States (the Confidentiality and Non-Disclosure Agreement) and breach of implied contracts with the United States (the restrictive legends).  The court disposes of this contention below.

## C.  Contract Disputes Act of 1978

Specifically, plaintiff alleges that its breach of contract claims are subject to the CDA because they arise under or relate to the GSA Schedule contract with DSD Laboratories, Inc. and its own GSA Schedule contract.[4]  The GSA Schedule contract entered into by plaintiff contains the following provision concerning the resolution of disputes:

> Disputes.  This contract is subject to the [CDA].  Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference.

Compl. Ex. 4 at 65.  The FAR disputes clause tracks the CDA.  Both provide that if a contractor has a dispute with the government relating to their contract, the contractor must submit a written claim to the contracting officer within six years of the accrual of the claim.[5]  41 U.S.C. § 605(a); FAR 52.233-1(d)(1).  Upon receipt of the claim, the contracting officer is required to issue a written decision or inform the contractor when such a decision will be rendered.  41 U.S.C. § 605(a), (c); FAR 52.233-1(d)(1), (e).  The decision of the contracting officer is final, unless it is properly appealed by the contractor.  41 U.S.C. § 605(b); FAR 52.233-1(f).  If the contracting officer does not issue a decision on the contractor's claim "within the period required," the claim will be deemed denied and an appeal is authorized.  41 U.S.C. § 605(c)(5).  The contractor may appeal the contracting officer's decision or deemed denial to the applicable board of contract appeals or the Court of Federal Claims.  Id. §§ 606, 609(a); see also FAR 52.233-1(f) (authorizing an appeal pursuant to the provisions of the CDA).

The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has characterized these "strict" requirements of the CDA's dispute resolution process as "'jurisdictional prerequisites'" to filing an appeal in the Court of Federal Claims.  England v. Swanson Group, Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004) (quoting Sharman Co. v. United States, 2 F.3d 1564, 1569 n.6 (Fed. Cir. 1993), overruled on other grounds by Reflectone, Inc. v.

---

[4]  Although neither party supplied the GSA Schedule contract with DSD Laboratories, Inc., there is no dispute that this contract was subject to the CDA.  See also 41 U.S.C. § 602(a) (indicating that the CDA generally "applies to any express or implied contract" for the procurement of goods and services); Federal Acquisition Regulation ("FAR") 8.405-7 (Jan. 1, 2003) (presuming that GSA Schedule contracts contain disputes clauses, identifying which claims should be submitted to which contracting officer, and permitting appeals of contracting officer decisions to the Court of Federal Claims or the applicable board of contract appeals).

[5]  For claims of more than $100,000, the contractor must provide a certification.  41 U.S.C. § 605(c)(1); FAR 52.233-1(d)(2) to (3).  However, "[a] defect in the certification of a claim shall not deprive a court . . . of jurisdiction over that claim."  41 U.S.C. § 605(c)(6).

Dalton, 60 F.3d 1572 (Fed. Cir. 1995) (en banc)).  Although the Federal Circuit has described the
requirements to assert a claim as "strict," its jurisprudence reflects that, "[i]n defining the
jurisdiction of the Court of Federal Claims over CDA disputes, Congress has chosen expansive,
not restrictive, language."  Alliant Techsys., Inc. v. United States, 178 F.3d 1260, 1268 (Fed. Cir.
1999).  In particular, the Federal Circuit has identified three general jurisdictional requirements
that must be satisfied for a contractor to assert a claim against the government: the contractor
must have submitted a proper claim to the contracting officer, the contracting officer must have
issued a decision on that claim, and the contractor must have properly appealed the contracting
officer's decision.

The first jurisdictional requirement is the existence of a proper claim.[6]  See id. (noting
that a claim is a "prerequisite[] of CDA jurisdiction"); Swanson Group, Inc., 353 F.3d at 1379
(holding that "jurisdiction . . . is lacking unless the contractor's claim is first presented to the
contracting officer"); James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1541 (Fed. Cir.
1996) ("[F]or the court to have jurisdiction under the CDA, there must be . . . a valid claim
. . . ."); H.L. Smith, Inc. v. Dalton, 49 F.3d 1563, 1564 (Fed. Cir. 1995) ("Submission of a valid
CDA claim is a jurisdictional prerequisite to appeal . . . .").  Federal Circuit precedent explains
that because the CDA does not define what constitutes a claim, the court looks to the FAR
disputes clause incorporated by reference into the GSA Schedule contract for guidance.  See
Reflectone, Inc., 60 F.3d at 1575 & n.3 (examining "the FAR implementing the CDA" and "the
language of the contract in dispute").  The FAR disputes clause defines "claim" as "a written
demand or written assertion by one of the contracting parties seeking, as a matter of right, the
payment of money in a sum certain, the adjustment or interpretation of contract terms, or other
relief arising under or relating to the contract."  FAR 52.233-1(c).  Thus, "the only three
requirements of a non-routine 'claim' for money [are] that it be (1) a written demand, (2)

_____

[6]  The CDA requires that a claim "relat[e] to" the contract, 41 U.S.C. § 605(a), and the
FAR requires a claim to "aris[e] under or relat[e] to" the contract, FAR 52.233-1(c).  The Federal
Circuit has not addressed whether the underlying subject matter of a claim is a jurisdictional
concern.  However, it has explained that "Congress's decision to limit the applicability of the
Act's procedures to those claims 'relating to' a contract indicates that the claim at issue must
have some relationship to the terms or performance of a government contract."  Applied Cos. v.
United States, 144 F.3d 1470, 1478 (Fed. Cir. 1998).  In the instant case, plaintiff's claim fits
within this broad conception of the proper subject matter of a CDA claim; its allegations that the
Defense Acquisition University breached the Confidentiality and Non-Disclosure Agreement and
the restrictive legends applicable to the procured ZODIAK products bear "some relationship" to
the performance of the GSA Schedule contracts at issue.  See also Todd Constr., L.P. v. United
States, 85 Fed. Cl. 34, 44-45 (2008) (concluding that a contractor's claim that the government's
performance evaluations were inaccurate and procedurally improper bore "some relationship" to
the parties' contract because "[t]he subject of the evaluations [was] the quality of the contractor's
performance under the terms of the contract").

seeking, as a matter of right, (3) the payment of money in a sum certain."[7] Reflectone, Inc., 60 F.3d at 1575; see also D.L. Braughler Co. v. West, 127 F.3d 1476, 1480 (Fed. Cir. 1997) (noting that "[i]f a contractor's submission fails to meet [these] requirements, it is not a 'claim'").

There is "no requirement in the [CDA] that a 'claim' must be submitted in any particular form or use any particular wording." Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987); see also Transam. Ins. Corp. v. United States, 973 F.2d 1572, 1578 (Fed. Cir. 1992) (noting that "certain 'magic words' need not be used and that the intent of the 'claim' governs"). "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." Contract Cleaning Maint., Inc., 811 F.2d at 592. Thus, the contractor's request for a decision from the contracting officer need not be explicit; it may be implied. James M. Ellett Constr. Co., 93 F.3d at 1543; see also Transam. Ins. Corp., 973 F.2d at 1576 ("The statute's broad language demonstrates that as long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met."). Moreover, "the phrase 'as a matter of right' . . . requires only that the contractor specifically assert entitlement to the relief sought. That is, the claim must be a demand for something due or believed to be due . . . ." Alliant Techsys., Inc., 178 F.3d at 1265; accord Reflectone, Inc., 60 F.3d at 1576. Finally, a contractor is permitted to demand more than one "sum certain" if each "sum certain" is "based upon a different legal theory but the same factual circumstance." Heyl & Patterson, Inc. v. O'Keefe, 986 F.2d 480, 484 (Fed. Cir. 1993), overruled on other grounds by Reflectone, Inc., 60 F.3d at 1572.

A claim containing the required elements must then be properly presented to the contracting officer. See Arctic Slope Native Ass'n v. Sebelius, 583 F.3d 785, 793 (Fed. Cir. 2009) ("[T]he presentment of claims to a contracting officer . . . is a prerequisite to suit in the Court of Federal Claims."), petition for cert. filed, 78 U.S.L.W. 3581 (U.S. Mar. 10, 2010) (No. 09-1172); Neal & Co. v. United States, 945 F.2d 385, 389 (Fed. Cir. 1991) (concluding that the jurisdictional prerequisites were met when "a proper claim was timely submitted to the contracting officer"); Reliance Ins. Co. v. United States, 931 F.2d 863, 866 (Fed. Cir. 1991) (holding that because certain claims were not submitted to the contracting officer, the court lacked jurisdiction over those claims). Proper presentment requires the submission of a timely claim. The submission requirement is met if the contractor sends its claim directly to the contracting officer or if "the contractor sends a proper claim to its primary contact with a request for a final decision of the contracting officer and a reasonable expectation that such a request will be honored, and the primary contact in fact timely delivers the claim to the contracting officer." Neal & Co., 945 F.2d at 388; see also Dawco Constr., Inc. v. United States, 930 F.2d 872, 880 (Fed. Cir. 1991) ("Neither the Act, nor its implementing regulations, instructs the contractor how [submission] be accomplished. . . . [T]he purpose of the Act's 'submit' language is not related

---

[7] In contrast, a routine request for payment may constitute a claim only if it is in dispute when submitted. FAR 52.233-1(c); accord James M. Ellett Constr. Co., 93 F.3d at 1542. Such a routine request is not at issue here.

to the minutia of addressing or delivering claim letters, . . . but is merely a requirement that once a claim is made, the parties must 'commit' the claim to the contracting officer and 'yield' to his authority to make a final decision."), <u>overruled on other grounds by</u> <u>Reflectone, Inc.</u>, 60 F.3d at 1572. The timeliness requirement is met if a contractor submits its claim to the contracting officer within six years of its accrual. <u>See Arctic Slope Native Ass'n</u>, 583 F.3d at 793 ("[T]he timely submission of a claim to a contracting officer is a necessary predicate to the exercise of jurisdiction by a court . . . over a contract dispute governed by the CDA.").

The second jurisdictional requirement is the existence of either a decision from the contracting officer on the contractor's claim or a deemed denial of the contractor's claim. <u>See</u> <u>Swanson Group, Inc.</u>, 353 F.3d at 1379 (holding that "jurisdiction over an appeal of a contracting officer's decision is lacking unless . . . that officer renders a final decision on the claim"); <u>Alliant Techsys., Inc.</u>, 178 F.3d at 1267-68 (noting that "the Tucker Act gives the Court of Federal Claims jurisdiction over CDA claims only when 'a decision of the contracting officer has been issued . . .'" and that a contracting officer's decision is a "prerequisite[] of CDA jurisdiction"); <u>James M. Ellett Constr. Co.</u>, 93 F.3d at 1541-42 (holding that "for the court to have jurisdiction under the CDA, there must be . . . a contracting officer's final decision" and that "Congress granted the court jurisdiction only over an appeal from a contracting officer's decision on a valid claim"); <u>Reflectone, Inc.</u>, 60 F.3d at 1575 ("Under the CDA, a final decision by a [contracting officer] on a 'claim' is a prerequisite for . . . jurisdiction."); <u>Sharman Co.</u>, 2 F.3d 1568 ("Under the CDA, a final decision by the contracting officer on a claim . . . is a 'jurisdictional prerequisite' to further legal action thereon." (footnote omitted)); <u>Paragon Energy Corp. v. United States</u>, 645 F.2d 966, 971 (Ct. Cl. 1981) ("[T]o invoke the jurisdiction of this court . . . there must first be a 'decision' (or failure to decide) by the contracting officer."). The decision of the contracting officer must be in writing. <u>Alliant Techsys., Inc.</u>, 178 F.3d at 1267 (citing 41 U.S.C. § 605(a)(1)). It must also be provided to the contractor, contain the reasons for the decision, and inform the contractor of its rights to appeal. <u>Id.</u> (citing 41 U.S.C. § 605(a)(1)). However, the contracting officer's decision need not contain language explicitly announcing that it is a final decision. <u>See id.</u> ("A letter can be a final decision under the CDA even if it lacks the standard language announcing that it constitutes a final decision."); <u>Placeway Constr. Corp. v. United States</u>, 920 F.2d 903, 907 (Fed. Cir. 1990) ("The decision is no less final because it failed to include boilerplate language usually present for the protection of the contractor."), <u>superseded on other grounds by statute</u>, Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub. L. No. 102-572, § 907(b), 106 Stat. 4506, 4519.

The third jurisdictional requirement is a proper appeal by the contractor. As an initial matter, an appeal of the contracting officer's decision to the Court of Federal Claims must be filed within a year of its receipt of the decision. <u>See James M. Ellett Constr. Co.</u>, 93 F.3d at 1541 ("The CDA grants the court jurisdiction over actions brought on claims within twelve months of a contracting officer's final decision."); <u>see also Pathman Constr. Co. v. United States</u>, 817 F.2d 1573, 1576 (Fed. Cir. 1987) ("[T]he twelve-month limitations period for bringing suit . . . does not begin to run until the contracting officer has issued his decision on the contractor's claim."). In addition, the contractor's appeal must "arise from the same operative facts" and seek

"essentially the same relief" as the claim submitted to the contracting officer. <u>Scott Timber Co. v. United States</u>, 333 F.3d 1358, 1365 (Fed. Cir. 2003); <u>see also id.</u> at 1365-66 (concluding that this requirement is jurisdictional in nature). Finally, the contractor may pursue its appeal only in the Court of Federal Claims. <u>See</u> <u>Bonneville Assocs. v. United States</u>, 43 F.3d 649, 653 (Fed. Cir. 1994) (holding, under the Election Doctrine, that "once a contractor makes a binding election to appeal the [contracting officer]'s final decision to a board of contract appeals or to the Court of Federal Claims, the contractor can no longer pursue its claim in the other forum"). Thus, if a contractor makes an informed, knowing, and voluntary decision to pursue its appeal in another forum with jurisdiction over the appeal, the Court of Federal Claims is required to dismiss a subsequently filed appeal concerning the same claim for lack of jurisdiction. <u>See id.</u> at 655 (holding that the Court of Federal Claims properly dismissed the contractor's complaint for lack of jurisdiction under the Election Doctrine); <u>see also id.</u> at 653 ("The Election Doctrine does not apply . . . if the forum originally selected lacked subject matter jurisdiction over the appeal"), 655 ("The Election Doctrine requires not only that the elected forum possess subject matter jurisdiction over the appeal, but also that the contractor's choice of forum be 'informed, knowing and voluntary.'" (citation omitted)).

In the instant case, plaintiff has satisfied all of the jurisdictional requirements set forth in the CDA and the FAR and discussed by Federal Circuit. It submitted a timely written claim to the contracting officer seeking, as a matter of right, payment of damages for breach of contract. The contracting officer either provided a written decision to plaintiff denying the claim that set forth the reason for his denial and apprised plaintiff of its right to appeal–as reflected by the December 14, 2006 letter signed by Mr. Hagyard denying plaintiff's claim–or, in the alternative position advanced by plaintiff, failed to issue a decision, resulting in a deemed denial. Plaintiff filed its appeal in the Court of Federal Claims within one year of receiving the contracting officer's decision. Its appeal arises from the same facts and seeks the same relief as its original claim submitted to the contracting officer. And, plaintiff did not first appeal its claim to another forum. Therefore, the court has jurisdiction to entertain plaintiff's suit.

### D. Defendant's Contentions

Nevertheless, defendant contends that the court lacks jurisdiction on other grounds. First, citing <u>Northrop Grumman Information Technology, Inc. v. United States</u>, 535 F.3d 1339 (Fed. Cir. 2008), it argues that jurisdiction is lacking because neither the Confidentiality and Non-Disclosure Agreement nor the restrictive legends were incorporated by reference into the GSA Schedule contracts. Defendant's reliance on <u>Northrop Grumman</u>, which holds that an "incorporating contract must use language that is <u>express</u> and <u>clear</u>, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract," <u>id.</u> at 1344, is unavailing for two reasons. One, plaintiff here is not arguing that the Confidentiality and Non-Disclosure Agreement and restrictive legends are incorporated by reference into the GSA Schedule contracts. Rather, plaintiff contends that the GSA Schedule contracts contain a provision that permits the negotiation of data rights outside of the four corners of the contracts. Two, the

Federal Circuit in <u>Northrop Grumman</u> explicitly held that incorporation by reference is not a jurisdictional issue. <u>See id.</u> at 1343 (holding that the Court of Federal Claims had jurisdiction to decide the issue under 41 U.S.C. § 609(a)(1)).

Defendant also argues, citing <u>Rick's Mushroom Service v. United States</u>, 521 F.3d 1338 (Fed. Cir. 2008), that the court lacks jurisdiction under 28 U.S.C. § 1491(a)(1) to determine whether there was a breach of an express contract with the United States (the Confidentiality and Non-Disclosure Agreement) or a breach of implied contracts with the United States (the restrictive legends). This contention also lacks merit. Plaintiff does not cite 28 U.S.C. § 1491(a)(1) in its complaint. Rather, it states:

> In accordance with 41 U.S.C. § 609(a)(1), Paradigm timely appeals from either the failure of the [Defense Acquisition University] to issue a contracting officer's final decision or otherwise to communicate to Paradigm within the CDA mandated 60 days, or from the December 14, 2006 Contracting Officer's Final Decision, as the case may be.

Compl. ¶ 9. Moreover, although plaintiff cites 28 U.S.C. § 1491(a)(1) in its opposition to defendant's motion to dismiss, it is apparent that the claims for breach of contract in its complaint are grounded upon 28 U.S.C. § 1491(a)(2) and the CDA. <u>See, e.g.,</u> Paradigm Learning, Inc.'s Opp'n Def.'s Mot. Dismiss 1 ("Plaintiff's Complaint in this Court is an appeal from the contracting officer's denial or deemed denial of Paradigm's August 11, 2006 claim under the CDA."), 16 ("Paradigm's Complaint and appeal from the denial of its CDA claim was explicitly based on and raised under . . . Paradigm's schedule contract."), 18-19 (arguing that it followed the procedures prescribed by the CDA in order to invoke this court's jurisdiction). Because plaintiff is not asserting independent breach of contract claims under 28 U.S.C. § 1491(a)(1), <u>Rick's Mushroom Service</u>, which held that the cost-share agreement at issue did "not provide a substantive right to recover money-damages" and therefore could not constitute a money-mandating source of jurisdiction under 28 U.S.C. § 1491(a)(1), 521 F.3d at 1343, is inapposite.

Finally, defendant asserts that the court lacks jurisdiction over plaintiff's complaint because plaintiff's breach of contract claims are really claims for misappropriation of trade secrets that sound in tort. In support of its argument, it cites <u>Sterner v. United States</u>, a case concerning the government's purported disclosure or use of a paper sleeping bag claimed to have been developed by the plaintiff, in which the court held that the plaintiff had not established the existence of an implied contract with the United States and that it lacked jurisdiction over a claim that the government converted a "property right through misuse and misappropriation of a trade secret" because such a claim sounded in tort. 198 Ct. Cl. 979, 979 (1972). <u>Sterner</u> is distinguishable from the instant case. In its complaint, plaintiff alleges claims for breach of an express contract that arise under the CDA. Its claims therefore do not sound in tort. <u>See, e.g.,</u> <u>Awad v. United States</u>, 301 F.3d 1367, 1372 (Fed. Cir. 2002) (holding, in a case arising under 28 U.S.C. § 1491(a)(1), that "[i]t is well established that where a tort claim stems from a breach of

-11-

contract, the cause of action is ultimately one arising in contract, and thus is properly within the . . . jurisdiction of the Court of Federal Claims").

### III.  CONCLUSION

In sum, defendant's contentions "confuse[] the question whether the Court of Federal Claims [has] jurisdiction to entertain [plaintiff's] complaint with the question whether the court should grant relief on the merits . . . ."  Alliant Techsys., Inc., 178 F.3d at 1270.  For the reasons set forth above, the court concludes that it has jurisdiction to entertain plaintiff's complaint pursuant to 28 U.S.C. § 1491(a)(2) and the CDA.  Thus, defendant's motion to dismiss is **DENIED**.  The parties shall file a joint status report **no later than Wednesday, June 30, 2010**, proposing a schedule for further proceedings.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge